**UNITED STATES of America**
v.
**Manuel R. SAMBRO, Appellant.**
**No. 23875.**

United States Court of Appeals, District of Columbia Circuit.

April 2, 1971.

On Rehearing En Banc Oct. 26, 1971.

David L. Bazelon, Chief Judge, dissented from denial of motion for rehearing en banc, and filed opinion in which J. Skelly Wright and Spottswood W. Robinson, III, Circuit Judges, joined.

Harold Leventhal, Circuit Judge, dissented from denial of motion for rehearing en banc, and filed opinion.

Mr. John Joseph Matonis, Washington, D. C., was on the brief for appellant.

Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry and Philip L. Cohan, Asst. U. S. Attys., were on the brief for appellee.

Before MacKINNON and WILKEY, Circuit Judges, and GORDON,* U. S. District Judge for the Eastern District of Wisconsin.

PER CURIAM:

The sole issue on this appeal is the District Court's refusal to allow the appellant to withdraw his plea of guilty at the time he appeared for sentencing. We do not find that the trial judge abused her discretion in the circumstances of this case, and therefore affirm.

## I. FACTS

Appellant was indicted in 12 counts for heroin and marijuana violations. A plea of guilty to one heroin count was accepted by the District Court, and the government thereupon dismissed the other 11 counts. A probation report was ordered and a day set for sentencing.

By the time the day of sentencing arrived the appellant claims he had learned that a conviction for a heroin violation would result in his deportation to his native country of Argentina. Appellant therefore moved to withdraw his plea of guilty on the ground that he did not fully understand "the consequences of the plea." [1] He also urged that he had had great difficulty in understanding English and therefore failed to understand the nature and significance of his plea and the penalty, but he did not claim

---

* Sitting by designation pursuant to 28 U.S.C. § 292(c) (1964).

1. Fed.R.Crim.P. 11.

that he failed to understand the trial court's several questions at the time of the guilty plea. There is no allegation of any promises made by any attorney or the court; the ground simply is that the appellant did not understand the ultimate consequence of a finding of guilty on the ancillary matter of deportation. The District Court suspended the imposition of sentence and placed appellant on probation for a period of four years.

## II. DISCRETION OF THE DISTRICT COURT UNDER FED.R.CRIM.P. 11 and 32(d)

Rule 11, in pertinent part, provides:

The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. * * * The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

Withdrawal of a plea of guilty is permitted under Rule 32(d):

A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

The unquestioned standard for permitting withdrawal of a guilty plea, unequivocally stated by Judge (now Chief Justice) Burger:

Overwhelming authority holds, as has this court, that withdrawal of a guilty plea before sentencing is not an absolute right but a decision within the sound discretion of the trial court which will be reversed by an appellate court only for an abuse of that discretion.[2]

Hence, the issue on this appeal is whether the trial judge abused her discretion.

■ Abuse of discretion has been defined by this court and the Supreme Court as "action which is arbitrary, fanciful, or clearly unreasonable."[3] Compare the application of the standard in *Everett:*

The record reveals a guilty plea, intelligently and voluntarily made with assistance of retained counsel and candid admission of all essential elements of the crime in open court; this is hardly a predicate for an appellate holding that the District Judge abused his discretion in refusing to permit a withdrawal. We are not disposed to encourage accused persons to "play games" with the courts at the expense of already overburdened calendars and the rights of other accused persons awaiting trial, * * * .[4]

We consider the requirements of Rule 11 are met when the trial court is satisfied after interrogation of the defendant personally that he understands the direct "consequences of the plea." The trial court is not *required* later on motion to withdraw the plea to consider possible ancillary or consequential results which are peculiar to the individual and which may flow from a conviction on a plea of guilty, although of course such consequences, if known, might be evaluated by the trial judge in assessing punishment. Fed.R.Crim.P. 32(a) (1).

■ The trial judge may well have considered, as we do, that appellant's asserted claim that he did not understand English well enough to evaluate the consequences of his plea is not supported by

---

2. Everett v. United States, 119 U.S.App. D.C. 60, 64, 336 F.2d 979, 983 (1964) (footnotes omitted).

3. United States v. McWilliams, 82 U.S. App.D.C. 259, 261, 163 F.2d 695, 697 (1947).

4. Everett v. United States, *supra*, 119 U.S. App.D.C. at 65 and 336 F.2d 984.

the record. His counsel stated that appellant "is now employed as an optical technician, is in this country on a permanent visa * * *," which indicates that he is regularly employed in a business requiring some command and understanding of English.

■ Nor did his awareness of a relationship between a criminal conviction and deportation originate *after* his plea of guilty. His counsel stated to the court, "Mr. Sambro and I at this time [of the plea of guilty] thought that it was possible for Your Honor to suspend sentence, put the defendant on probation, without him being deported, since he is a citizen of Argentina." This indicates clearly that far from the appellant's being confused by a poor command of English and not having considered deportation, he and his counsel both had considered the possibility of deportation as a result of conviction on this plea of guilty, and had reached an erroneous conclusion as to the legal effect.

We note that here the District Court imposed no immediate prison term, only four years' probation. Since appellant is an alien, the net result will be immediate deportation without serving either a prison term or four years' probation. We also observe that the Government was willing to accept a plea to one of the heroin, not marijuana, counts of the 12-count indictment, thus evidencing some .confidence in the strength of its case if the matter came to trial. We do not see that the appellant was unfairly or unjustly treated in these circumstances, or that the interests of justice would be best served by remanding the case for trial on the 12-count narcotics indictment.

III. REPUDIATION OF APPELLANT'S ADMISSION THAT HE COMMITTED THE ACT CHARGED

We say that appellant was not unfairly or unjustly treated, for several rea-sons stated above. Furthermore, even yet he has not alleged that he has any valid defense to the crime charged in the count to which he pleaded guilty.

Appellant's misunderstanding as to the collateral legal consequences of his plea bears a close resemblance to the situation in Brady v. United States.[5] There the petitioner Brady sought post-conviction relief on the ground that, had he known of a subsequent Supreme Court decision at the time of his plea of guilty, he would never have made such a plea. In rejecting Brady's argument, the Supreme Court analyzed the effect of a guilty plea under Rule 11, saying: "Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment." [6] Equally pertinent:

The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. * * * The fact that Brady did not anticipate United States v. Jackson, *supra,* does not impugn the truth or reliability of his plea.[7]

We recognize some distinctions can be drawn between the withdrawal of a plea of guilty before the imposition of sentence (Sambro) and the setting aside of a post-conviction plea of guilty (Brady), but the point made by the Supreme Court in *Brady* is the same here, *i. e.,* that under Rule 11 "the court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea," and, as phrased in *Brady,* "the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged." Hence, a plea of guilty is a confession in open court as to the facts alleged: in the instant case appellant Sambro has made

---

5. 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

6. *Id.,* at 748, 90 S.Ct. at 1468.

7. *Id.,* at 757, 90 S.Ct. at 1473.

such a confession, has said nothing whatever to repudiate it, nor has he claimed any legal defense to the charge.

## IV. MISUNDERSTANDING OF THE COLLATERAL CONSEQUENCES OF A PLEA

As discussed under Part II, *supra,* the withdrawal of a plea rests within the discretion of the trial court. Only if there is some law which absolutely *requires* the trial court to permit appellant here to withdraw his plea does appellant have a valid ground on which we should reverse the trial court. And, as indicated under Part III, *supra,* a voluntary plea of guilty is a voluntary confession of the acts alleged.

The standard as to the voluntariness of guilty pleas was reiterated by the Supreme Court in *Brady, supra:*

> A plea of guilty entered by one fully aware of the *direct* consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e. g.,* bribes).[8]

We note that the accused must be "fully aware of the *direct* consequences." We presume that the Supreme Court meant what it said when it used the word "*direct*"; by doing so, it excluded *collateral* consequences.

We have here then a voluntary plea of guilty by the appellant; there is no contention that he was not fully aware of the direct consequences of his plea, and there is no contention that any of the other circumstances listed by the court could possibly be cited to invalidate the voluntariness of his plea of guilty, *i. e.,*

his voluntary confession. That plea of guilty, that confession, has not been repudiated.

Appellant's situation is similar to that in Everett v. United States, *supra,* as described by Judge (now Chief Justice) Burger:

> [A]ppellant offered no defense to the charge, nor did he allege involuntariness or any other factor which would militate against the correctness and truth of his guilty plea to Count 4 which was entered when he was represented by retained counsel. His contention is virtually a claim of an absolute right to withdraw a guilty plea prior to imposition of sentence. No court has ever so held; * * * .[9]

Unless the appellant has an absolute right to withdraw the guilty plea prior to imposition of sentence, unless such withdrawal is not a matter of the trial court's discretion, then there is no ground for reversal of the trial court's action here. No court to our knowledge has ever held that there was such absolute right, and all decisions speak of the discretion of the trial judge to permit or deny the withdrawal of a plea of guilty prior to sentence.

United States v. Parrino [10] involved a virtually similar factual situation. There the defendant pled guilty to one count of the indictment, the others were dismissed, and (the only distinction from *Sambro*) he entered upon service of his sentence. The record showed that before changing his plea the defendant was informed by the lawyer then representing him that a plea of guilty would not subject him to deportation. The Second Circuit held that surprise which results from erroneous information received from the defendant's own attorney, at least without a clear showing of unprofessional conduct, is not enough to set aside a conviction. "Moreover, here the subject-matter of the claimed sur-

8. *Id.,* 397 U.S. at 755, 90 S.Ct. at 1472, originally the language of Circuit Judge Tuttle, endorsed by the Supreme Court (emphasis supplied).

9. 119 U.S.App.D.C., at 63–64, 336 F.2d, at 982–983 (footnotes omitted).

10. 212 F.2d 919 (2d Cir. 1954).

prise was not the severity of the sentence directly flowing from the judgment but a collateral consequence thereof, namely, deportability. * * * We think it plainly unsound to hold, as now in principle we are urged to hold, that such defendants are subjected to manifest injustice, if held to their plea, merely because they did not understand or foresee such collateral consequences. We find no case which even looks in that direction, and the absence of cases expressly rejecting such doctrine we attribute to the absence of a rule so palpably unsound." [11]

This court confronted a converse situation in Briscoe v. United States,[12] where appellant sought to set aside his guilty plea as involuntary. While the case was remanded for determination of the voluntariness of his guilty plea on other grounds, this court held, "We do not accept appellant's contention that his guilty plea must be set aside as involuntary because it was induced by his *misunderstanding, in that he thought he was in fact to be deported.*"[13]

## V. THE AMERICAN BAR ASSOCIATION MINIMUM STANDARDS RELATING TO PLEAS OF GUILTY

While on all the previously decided cases appellant's contention is not meritorious, neither is it meritorious measured by the ABA Minimum Standards for Criminal Justice adopted in 1968.

The Standards Relating to Pleas of Guilty, § 2.1, Plea withdrawal, set up a single standard, "to correct a manifest injustice for obligatory withdrawal whenever, *before or after conviction,*[14] the defendant proves that withdrawal is necessary.

(a) The court should allow the defendant to withdraw his plea of guilty or nolo contendere whenever the defendant, upon a timely motion for withdrawal, proves that withdrawal is necessary to correct a manifest injustice.

* * * * * *

(b) In the absence of a showing that withdrawal is necessary to correct a manifest injustice, a defendant may not withdraw his plea of guilty or nolo contendere as a matter of right once the plea has been accepted by the court. Before sentence, the court in its discretion may allow the defendant to withdraw his plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea.

Observe that "*whenever* the defendant * * * *proves* that withdrawal is necessary to correct a *manifest injustice,*" then "[t]he court *should* allow the defendant to withdraw his plea." But, unless the defendant makes the required proof of manifest injustice, he "may *not* withdraw his plea * * * *as a matter of right.*" Instead, the defendant is relegated to a different standard: "Before sentence, the court *in its discretion may* allow the defendant to withdraw his plea for *any fair and just reason.* * * * *"

"Manifest injustice" may be proved by any one of five circumstances, not one of which has anything to do with *collateral* consequences, and it is only "manifest injustice" which gives the defendant a *right* to plea withdrawal. Failing this obligatory standard, defendant can resort to the standard of "any fair and just reason," but here the determination of "fair and just" is confided to the discretion of the court. The

11. *Id.,* at 921–922.

12. 129 U.S.App.D.C. 146, 391 F.2d 984 (1968).

13. *Id.,* at 148, 391 F.2d at 986 (emphasis supplied).

14. "This language, it should be noted, says nothing about the standard to be employed before sentence. However, federal cases dealing with the question of when the judge *must* allow the defendant to withdraw his plea have employed the 'manifest injustice' test whether the application was before or after sentence. Note, 64 Yale L.J. 590 n. 4 (1955). This is the test adopted in the above standard." Commentary on § 2.1, at 54. (Emphasis in original.)

language is "the court in its discretion" and *"may* allow," not *"should* allow."

The *Commentary* is illuminating and supports the disposition we make of this case:

> There does not appear to be any good reason for allowing withdrawal as a matter of right, absent a showing of manifest injustice, once the court has accepted the plea.
>
> The standard does recognize the generally acknowledged discretion of the judge to permit withdrawal before sentence even in the absence of a manifest injustice. This is a matter solely within the discretion of the judge; he may but need not grant the motion. In the federal system, it is common to refer to this discretion as covering cases in which the defendant offers any "fair and just reason" for withdrawal. Note, 40 N.Y.U.L.Rev. 759 (1965). For example, a judge may but need not allow presentence withdrawal when the defendant establishes that there are circumstances which might lead a jury to refuse to convict notwithstanding his technical guilt of the charge. Everett v. United States [119 U.S.App.D.C. 60], 336 F.2d 979 (D.C.Cir. 1964). Or, a judge *might* allow withdrawal because the defendant has become aware of some collateral consequences of conviction which he wants to avoid. Note, *supra,* [397 U.S.] at 763.[15] [90 S.Ct. 1463, 25 L. Ed.2d 747].

The last sentence is the only reference to the effect of collateral consequences on the trial judge's decision on allowing withdrawal of a plea which we have found in either the black letter test or Commentary on the ABA Minimum Standards Relating to Pleas of Guilty.

Finding no error in the District Court's action in denying appellant's motion to withdraw his plea of guilty at time of sentencing, the judgment is therefore

Affirmed.

### On Motion for Rehearing En Banc

Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON, ROBB and WILKEY, Circuit Judges.

PER CURIAM:

The motion for rehearing *en banc* initiated by a member of the Court in regular active service is denied, a majority of the *Circuit Judges who are in regular active service not having voted in favor of it* (Rule 35, Federal Rules of Appellate Procedure).

BAZELON, Chief Judge:

In view of the importance of the question presented by this case, I asked the court to consider rehearing the case *en banc* on the court's own motion. Fed. R.App.P. 35(a). The court declined to order rehearing, and I dissent from that decision.[1]

Appellant claims the trial court abused its discretion in denying his motion to withdraw a plea of guilty. Fed.R.Crim. P. 32(d). In my view there was a clear abuse of discretion on the facts of this case. More important, however, I think it is essential for this court to give the trial court some guidance in the exercise of that discretion.

Our criminal justice system has come increasingly to depend on guilty pleas, which are largely the product of plea bargains.[2] It is said that the system

---

15. *Id.,* at 58.

1. *See, e. g.,* Southern Ry. Co. v. Lanham, 408 F.2d 348 (5th Cir. 1969) (dissent from denial of rehearing *en banc*).

2. *See, e. g.,* The President's Comm'n on Law Enforcement and Administration of Justice, Task Force Report: The Courts 9 (1967); D. J. Newman, Conviction: The Determination of Guilt or Innocence Without Trial 3 n. 1 (1966); H. I. Subin, Criminal Justice in a Metropolitan Court 15–17, 34–35, 37–38, 42–50 (1966) (account of process in District of Columbia).

would break down if every defendant demanded his constitutional right to a trial.[3] To avoid that breakdown, we tolerate a system which substitutes low-visibility negotiations for the adversary process.[4] So long as we depend on a system that encourages defendants to waive their constitutional rights, we have an obligation at least to ensure that defendants do not waive their rights through ignorance, without full understanding of the consequences. Surely poor, uneducated, or inexperienced people are entitled to at least as much protection in negotiating pleas to criminal charges, when liberty is at stake, as they are in negotiating ordinary commercial transactions.[5]

With respect to guilty pleas, Fed.R. Crim.P. 32(d) provides the basic mechanism for relieving such people of the bargains they may make without the information necessary to make intelligent decisions. That rule authorizes the trial court to permit the withdrawal of a guilty plea at any time "to prevent manifest injustice." Prior to sentencing, as in this case, the standard is far more liberal: "[t]he court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the privilege seems fair and just." Kercheval v. United States, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927).[6] If trial courts exercise their discretion under that rule in a grudging manner, then the criminal process becomes a trap for the unwary, an efficient machine for obtaining swift convictions, instead of an orderly system for dispensing justice.

In this case it is undisputed that appellant entered his guilty plea without knowing that a narcotics conviction would lead to automatic deportation; he and his counsel believed the sentencing judge had the power to suspend deportation, and they believed that appellant's record would persuade the judge to do so.[7] After appellant entered the plea, and before he was sentenced, he discovered that the judge had no such discretion, and filed a motion to withdraw his plea.

For me it is a close question whether the plea when entered was intelligently and voluntarily made, in accordance with the requirements of Fed.R.Crim.P. 11. A plea is not voluntary within the meaning of that rule if the defendant fails to understand the consequences of the plea. As the court points out, however, courts have distinguished "collateral" from "direct" consequences for the purposes of Rule 11, and it might possibly be appropriate to treat deportation as a "collateral" consequence, which need not be made clear to the defendant before he enters a valid plea.

Here, however, the court confronts a different question. A Rule 32 motion to withdraw a guilty plea need not allege that the court failed to comply with the procedures required by Rule 11. A

---

3. *See, e. g.,* Chief Justice Burger, The State of the Judiciary—1970, 56 A.B.A.J. 929 (1970).

4. For some of the problems involved in attempting to make the process more visible, see Scott v. United States, 135 U.S. App.D.C. 377, 419 F.2d 264 (1969).

5. *Cf.* Williams v. Walker-Thomas Furniture Co., 121 U.S.App.D.C. 315, 350 F.2d 445 (1965).

6. *Kercheval* establishes the standard for a presentence motion under Rule 32(d), *see* Nagelberg v. United States, 377 U.S. 266, 84 S.Ct. 1252, 12 L.Ed.2d 290 (1964) ; Gearhart v. United States, 106 U.S.App.D.C. 270, 273, 272 F.2d 499,

502 (1959) ; Poole v. United States, 102 U.S.App.D.C. 71, 75, 250 F.2d 396, 400 (1957).

7. Sentencing Transcript at 3. 8 U.S.C. § 1251(a) (11) provides in pertinent part that an alien is deportable if he has been convicted of violating any law relating to the illicit possession of or traffic in narcotic drugs or marihuana. 8 U.S. C. § 1251(b) provides that an alien deportable by virtue of certain criminal convictions may avoid deportation if the sentencing court so recommends. § 1251 (b) excludes from its operation, however, those aliens who are deportable by virtue of narcotics convictions under § 1251(a) (11).

plea that was valid when made may nevertheless be withdrawn if the interests of justice so require.[8]

After sentencing, the relevant standard is "to prevent manifest injustice." Even under that strict standard, appellant might well be entitled to withdraw his plea. The court cites Briscoe v. United States, 129 U.S.App.D.C. 146, 391 F.2d 984 (1968), for the proposition that a guilty plea is not necessarily rendered involuntary by a misunderstanding concerning the effect of a conviction on deportation.[9] The court overlooks the fact, however, that in *Briscoe I* we remanded the case for further hearings to determine, *inter alia,* whether the misunderstanding was fostered by the government, and whether the plea should be set aside in the interest of justice. 129 U.S.App.D.C. at 150 & n.2, 391 F.2d at 988 & n.2. We also noted, without deciding, the possibility that even if the mistake was attributable entirely to the error of defense counsel, it might provide grounds for relief, on the theory that the defendant had been deprived of his constitutional right to effective assistance of counsel. *Id.*

A mistake concerning deportation, though not fostered by the government, was held sufficient to support a post-sentence motion in United States v. Shapiro, 16 F.R.D. 499 (E.D.Wis.), appeal dismissed, 222 F.2d 836 (7th Cir. 1955). While the Second Circuit refused to

grant relief on that ground in the absence of government involvement, United States v. Parrino, 212 F.2d 919, 921 (2d Cir.), cert. denied, Parrino v. United States, 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954), Judge Frank argued in a forceful dissent that a mistake concerning deportation, even if attributable entirely to defense counsel, should be sufficient to require relief. 212 F.2d at 922. Judge Frank's view has been cited with approval both by Professor Moore and by this court. Professor Moore states that "the vigorous dissent of Judge Frank more likely reflects the present attitude of the federal judiciary." 8A J. Moore, Federal Practice ¶ 32.07[3] at 32–80 (Cipes ed. 1969). And this court, stating that "we agree with Professor Moore" on that point, has made it quite clear that "[u]nder appropriate circumstances the fact that a defendant has been misled as to consequence of deportability may render his guilty plea subject to attack." United States v. Briscoe, 139 U.S.App.D.C. 289, 291, 432 F.2d 1351, 1353 (1970) (Leventhal, J.).[10]

A fortiori, under the generous standard that applies prior to sentencing, appellant's mistake concerning deportation should be adequate to support his motion to withdraw a guilty plea. It is well established that presentence withdrawal should be freely allowed, *i. e.,* that a "fair and just" reason is easily estab-

---

8. *See, e. g.,* Pilkington v. United States, 315 F.2d 204, 209 (4th Cir. 1963) (Sobeloff, C. J.) : "The facts disclosed in a hearing might not be sufficient for the court to conclude that the guilty plea was involuntary and violative of due process, yet the court may be of the opinion that clear injustice was done."

9. For the court's treatment of this case, hereafter *Briscoe I,* see United States v. Sambro, at 923.

10. At the remand hearing ordered by this court in *Briscoe I,* the trial court found that the prosecutor had not in any significant way fostered appellant's misunderstanding. We affirmed that finding in *Briscoe II,* quoted in text. We also

found in the record no basis for relief on the ground of involuntariness, or ineffective assistance of counsel. A critical factor in our decision was the fact that Briscoe was attacking his conviction in a collateral proceeding, which could afford no meaningful relief in the peculiar circumstances of that case: appellant's sentence had been limited to time served, and he did not seek to avoid the resulting deportation. Indeed Briscoe, unlike the defendant in this case or in *Parrino,* had entered a guilty plea not in the hope of avoiding deportation, but in an effort to bring it about; his mistake was in thinking he needed another conviction in order to become eligible for deportation.

lished.[11]  Surely such a reason exists when a defendant has entered a guilty plea without the knowledge that his conviction will result in deportation.  The Supreme Court has observed that deportation may result in "loss of both property and life, or of all that makes life worth living."  Ng Fung Ho v. White, 259 U.S. 276, 284, 42 S.Ct. 492, 66 L.Ed. 938 (1922) (Brandeis, J.).  Mr. Justice Jackson has described deportation as "a life sentence of banishment."  Jordan v. De George, 341 U.S. 223, 232, 71 S.Ct. 703, 95 L.Ed. 886 (1951) (dissenting opinion).

Prior to sentencing, the government has ordinarily taken no action in reliance on a guilty plea.  The government thus has no interest in holding the defendant to a bargain he never meant to make.  The defendant, on the other hand, has a great interest in withdrawing from the bargain and contesting the charge, when he knows that conviction will require his deportation.[12]

This is not a case like Everett v. United States, 119 U.S.App.D.C. 60, 336 F. 2d 979 (1964), where the court said that no reason at all had been alleged in support of the motion to withdraw the plea. This case instead falls squarely within the well-settled rule that for any "fair and just" reason a presentence motion to withdraw a guilty plea should be allowed.

In affirming this conviction, the court has repudiated that rule.  It has thereby stripped from the plea bargaining process one of its all-too-few critical safeguards.  Because of the importance of that step for the administration of justice in this jurisdiction, the case is a most appropriate one for the *en banc* consideration of this court.

Circuit Judges J. SKELLY WRIGHT and SPOTTSWOOD W. ROBINSON, III, join in dissent.

LEVENTHAL, Circuit Judge.

I would grant rehearing *en banc* to clarify the sufficiency, for purposes of a withdrawal of a guilty plea before sentence, of a showing that defendant was given misleading information concerning a significant, though collateral, consequence of a guilty plea.

The panel opinion states that such collateral consequences do not give a right to withdraw the plea but are only a basis on which the trial judge may exercise his discretion to permit withdrawal of the plea.  Even on this assumption, the question arises whether this invocation of discretion can be denied if the record is devoid of a showing of some offsetting element of administration of justice. The Government did not even submit, *e. g.*, that it no longer had available a crucial witness who was available when the guilty plea was taken.

More broadly put, the question is whether the discussion in Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) operates to delineate the standard appropriate under Rule 11 for withdrawal of a guilty plea prior to sentence.

These questions seem to me to warrant *en banc* consideration.

---

11. "Leave to withdraw a guilty plea prior to sentencing should be freely allowed." Poole v. United States, 102 U.S.App.D.C. 71, 75, 250 F.2d 396, 400 (1957).  "[I]t goes without saying that a plea of guilty at that time can be and often is changed, on proper motion, as a matter of course." McJordan v. Huff, 77 U.S.App.D.C. 171, 172, 133 F.2d 408, 409 (1943).

12. The difference between the pre-sentence and post-sentence standards is discussed in Kadwell v. United States, 315 F.2d 667 (9th Cir. 1963).  The difference between the two standards is important, and application of the wrong standard is grounds for reversal.  United States v. Stayton, 408 F.2d 559 (3d Cir. 1969).