UNITED STATES of America

v.

Rafael MORA–GOMEZ,
Defendant/Petitioner.

Crim. A. Nos. 90–107–A, 90–315–M.

United States District Court,
E.D. Virginia.

Feb. 15, 1995.

Helen F. Fahey, U.S. Atty., Jay Apperson, Asst. U.S. Atty., Alexandria, VA, for U.S.

Paul Gussendorf, Washington, DC, for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This matter comes before the Court on defendant's petition for writ of error *coram nobis*.[1] At issue is petitioner's contention that his guilty plea to a drug trafficking crime should be set aside because he received ineffective assistance of counsel when his lawyer wrongly advised him on the law. For the reasons stated, the petition must be denied.

### I.

Petitioner is a citizen and native of Cuba who came to this country in 1961. On April 2, 1990, he pled guilty to a one count criminal information charging him with conspiracy to possess with intent to distribute 500 or more grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) and § 846. Petitioner alleges that, prior to his plea, his counsel assured him that he "need not worry about any possibility of being deported, that he [counsel] would arrange with the judge that [petitioner] would not be deported because of [petitioner's] guilty plea." Affidavit of Rafael Mora–Gomez, at p. 2.

Petitioner was sentenced June 8, 1990. Under the Sentencing Guidelines, his total offense level was 22 and his criminal history score was in category I, resulting in a sentencing range of 41 to 51 months. *See* United States Sentencing Guidelines ("U.S.S.G.") § 5A. A statutory mandatory minimum sentence of 5 years trumped the guidelines range in the absence of a downward departure. *See* 21 U.S.C. § 841(b)(1)(B). In this case, the government moved for a downward departure under U.S.S.G. § 5K1.1 based on petitioner's substantial assistance to authorities. The motion was granted and petitioner's offense level was reduced to 10, resulting in a new sentencing range of 6 to 12 months.

---

1. *Coram nobis* is a remedy that is very similar in function to a motion to vacate or set aside sentence pursuant to 28 U.S.C. § 2255, although dissimilar to § 2255 in that it is available to one, like petitioner, who is no longer in custody.

*United States v. Morgan,* 346 U.S. 502, 510–11, 74 S.Ct. 247, 252, 98 L.Ed. 248 (1954). District courts have the authority to entertain petitions for *coram nobis* relief under the "All Writs Section," 28 U.S.C. § 1651(a).

The Court sentenced petitioner, *inter alia*, to 6 months imprisonment and 2 years supervised release. At the conclusion of the sentencing hearing, petitioner's counsel informed the Court that petitioner would be seeking a judicial recommendation against deportation.[2] The Court noted that such recommendations were subject to jurisdictional time limitations and required notice to the INS. Petitioner's counsel responded that he was aware of these requirements, and would comply.

Petitioner, by counsel, subsequently filed a motion for a judicial recommendation against deportation or exclusion pursuant to 8 U.S.C. § 1251(b). The government opposed the motion on the ground that the statute did not permit a judicial recommendation against deportation where, as here, a defendant was convicted of a drug offense. In particular, the government pointed out that 8 U.S.C. § 1251(a) lists a number of grounds for deportation which applied to petitioner, including conviction of a crime involving moral turpitude, § 1251(a)(4), and conviction of a drug possession or trafficking offense, § 1251(a)(11). Further, the government correctly noted, the statute expressly provided that a judicial recommendation against deportation was then only available to an alien charged with deportation pursuant to § 1251(a)(4), but was not available to an alien charged under § 1251(a)(11). 8 U.S.C. § 1251(b)(1)–(2). Petitioner's motion for a recommendation was heard on July 6, 1990, at which time petitioner's counsel indicated that he had not received the government's memorandum, and was unprepared to argue whether the statute authorized a recommendation in petitioner's case. Because it was clear on the statute's face that a recommen-

dation was not available under the statute, the Court denied petitioner's motion.[3]

On February 23, 1991, petitioner completed his 6 month sentence and was released to an INS detainer. He was then detained by the INS for over 11 months. During that period, petitioner's former counsel withdrew. On May 1, 1991, through his present counsel, petitioner filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241, alleging that his indefinite detention without bail or opportunity for review violated federal statute and Due Process. By order of January 6, 1992, the *habeas* petition was denied as moot, because Congress had amended the statute in 1991 to allow the Attorney General to release a person in petitioner's circumstances who demonstrates that he "is not a threat to the community" and "is likely to appear before any scheduled hearings." *See* 8 U.S.C. § 1252(a)(2)(B). Pursuant to this provision, petitioner has now been released from INS detention, but is still subject to a deportation order triggered by his conviction. To avoid deportation or further immigration detention, petitioner attacks his conviction by way of a writ of error *coram nobis*.[4]

## II.

■ A writ of error *coram nobis* is a remedy intended to achieve justice when "errors of the most fundamental character" have occurred in a criminal proceeding. *United States v. Morgan*, 346 U.S. 502, 511–12, 74 S.Ct. 247, 252–53, 98 L.Ed. 248 (1954) (quoting *United States v. Mayer*, 235 U.S. 55, 69, 35 S.Ct. 16, 19, 59 L.Ed. 129 (1914)). To obtain *coram nobis* relief, petitioner must show (i) that his conviction or sentence involved an error of the most fundamental character, (ii) that it is probable that a different result would have occurred if not for the

---

**2.** In 1990, at the time of petitioner's conviction, 8 U.S.C. § 1251(b) provided for judicial recommendations against deportation. Since then, § 1251 has been extensively revised by Congress. Among the revisions was the elimination of the provision allowing judicial recommendations against deportation, effective for convictions occurring on and after November 29, 1990. Throughout this opinion, references to § 1251 refer to the statute in effect at the time of petitioner's conviction, sentencing, and motion for judicial recommendation.

**3.** The Court allowed defendant leave to move for reconsideration if he found that the government and the Court's interpretation of the statute was in error. Defendant did not seek such reconsideration.

**4.** Because Cuba generally refuses to accept return of its citizens, it is unlikely that petitioner's deportation will be accomplished in the near future. *See Cruz–Elias v. United States Attorney General*, 870 F.Supp. 692 (E.D.Va.1994).

error, (iii) that adverse consequences continue to flow from the conviction such that a case or controversy exists within the meaning of Article III, (iv) that a more usual remedy is not presently available to correct the error, and (v) that sound reasons exist for not challenging the error earlier, such as by direct appeal or § 2255 motion. *Scates v. United States,* 914 F.2d 249, 1990 WL 135863, 1991 U.S.App. LEXIS 16,754 (4th Cir. Sept. 21, 1990) (unpublished), *cert. denied,* 500 U.S. 919, 111 S.Ct. 2020, 114 L.Ed.2d 106 (1991); *Hirabayashi v. United States,* 828 F.2d 591, 604 (9th Cir.1987).[5] Each requirement is separately considered.

**1.**

To obtain *coram nobis* relief, petitioner must first establish that a fundamental error occurred at some point in his criminal proceeding. *Morgan,* 346 U.S. at 512, 74 S.Ct. at 253. Such a fundamental error occurs where a defendant receives ineffective assistance of counsel in violation of the Sixth Amendment. *See Morgan,* 346 U.S. at 511–12, 74 S.Ct. at 252–53 (finding *coram nobis* lies to remedy Sixth Amendment error); *Moody v. United States,* 874 F.2d 1575, 1577–78 (11th Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1137, 107 L.Ed.2d 1042 (1990). To prove ineffective assistance, petitioner must show (i) that his attorney's performance was, in light of all circumstances, unreasonable under prevailing professional norms, and (ii) that there is a reasonable probability that, but for counsel's errors, a different result would have obtained. *Strick-*

land v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

The government contends that the customary *Strickland* analysis is displaced here by a per se rule that faulty legal advice concerning the immigration and deportation consequences of a guilty plea *never* constitutes ineffective assistance. The alleged rule arises from the fact that deportation is a collateral, rather than direct, consequence of a guilty plea or conviction.[6] It is well established that the Constitution does not require defense counsel to inform an accused person of the collateral consequences of his guilty plea, and therefore that ineffective assistance does not occur where counsel fails to tell the defendant that his plea may or will result in deportation. *See United States v. DeFreitas,* 865 F.2d 80, 82 (4th Cir.1989); *United States v. Quin,* 836 F.2d 654, 655 (1st Cir.1988); *United States v. Campbell,* 778 F.2d 764, 768 (11th Cir.1985); *United States v. Gavilan,* 761 F.2d 226, 228–29 (5th Cir.1985).[7] Similarly, a defendant is not entitled to withdraw his plea merely because he was not informed by the court or his counsel that his plea would result in deportation. *See United States v. Russell,* 686 F.2d 35, 38–39 (D.C.Cir.1982); *Garcia–Trigo v. United States,* 671 F.2d 147, 150 (5th Cir.1982); *Fruchtman v. Kenton,* 531 F.2d 946, 948–49 (9th Cir.), *cert. denied,* 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976); *Nunez Cordero v. United States,* 533 F.2d 723, 726 (1st Cir. 1976); *Michel v. United States,* 507 F.2d 461, 464–66 (2d Cir.1974).

Yet, petitioner does not merely claim that his counsel failed to inform him about the

---

5. The second of the five elements was not mentioned in the unpublished Fourth Circuit opinion in *Scates,* which relied on *Hirabayashi.* The Ninth Circuit panel in *Hirabayashi* found it was unnecessary to decide whether a *coram nobis* petitioner must show that it is probable the error made a difference in the outcome. *See* 828 F.2d at 604 n. 14. Yet, as several circuit courts have recognized, it is obvious that if *coram nobis* reaches only errors "of the most fundamental character," *Morgan* 346 U.S. at 512, 74 S.Ct. at 253, it clearly does not reach errors that have no material effect on the proceeding. *United States v. Dellinger,* 657 F.2d 140, 144 n. 9 (7th Cir. 1981); *Bateman v. United States,* 277 F.2d 65, 68 (8th Cir.1960).

6. The collateral consequences of a conviction are those that occur as a result of a conviction and sentence, but are not specifically imposed by the sentencing court. Included in this category of consequences are such matters as damage to reputation, loss of professional licenses, and loss of certain civil rights.

7. These cases draw support from the Supreme Court's statement that a defendant must be "fully aware of the *direct* consequences" of his guilty plea. *See Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970) (emphasis added) (quoting *Shelton v. United States,* 246 F.2d 571, 572 n. 2 (5th Cir.1957), *rev'd on other grounds,* 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958)).

**1212**

consequences of his plea. Rather, he alleges that prior to his plea, his counsel told him that he would receive a judicial recommendation against deportation and therefore that his guilty plea would not result in deportation. This statement, if made, was plainly erroneous. Thus, petitioner draws a distinction between an attorney's passive failure to mention the deportation consequences of a plea, which it is clear cannot constitute ineffective assistance, and his counsel's affirmative misstatement of the consequences, which he contends does amount to ineffective assistance.

It is unsettled in this circuit whether the distinction drawn by petitioner is a meaningful one. The Fourth Circuit has twice discussed whether affirmative misstatements concerning the deportation consequences of a plea may constitute ineffective assistance. In both instances, the court has avoided deciding the question because it found that there was no affirmative misstatement, only an omission of advice. *See United States v. DeFreitas*, 865 F.2d 80, 82 (4th Cir.1989); *United States v. Yearwood*, 863 F.2d 6, 7–8 (4th Cir.1988).

Yet, petitioner's argument is strongly supported by the Fourth Circuit's closely analogous decision in *Strader v. Garrison*, 611 F.2d 61 (4th Cir.1979). There, Strader complained that he received ineffective assistance of counsel because he was wrongly advised by his lawyer regarding the effect the new sentence would have on his parole eligibility

date. The state's attorneys argued that the misstatement concerned a collateral consequence of the plea, and thus it could not constitute ineffective assistance. The panel rejected this argument, holding that:

> [T]hough parole eligibility dates are collateral consequences of the entry of a guilty plea of which a defendant need not be informed if he does not inquire, when he is grossly misinformed about it by his lawyer, and relies upon that misinformation, he is deprived of his constitutional right to counsel.

*Id.* at 65.[8]

*Strader*'s distinction between passive omission and affirmative misstatement must be equally applicable to the other collateral consequences of pleas, including deportation. No reason in principle or policy suggests otherwise. In fact, among the courts that have decided the question, the clear consensus is that an affirmative misstatement regarding deportation may constitute ineffective assistance. *See Downs–Morgan v. United States*, 765 F.2d 1534, 1538–41 (11th Cir. 1985); *United States v. Briscoe*, 432 F.2d 1351, 1353–54 (D.C.Cir.1970); *State v. Sallato*, 519 So.2d 605 (Fla.1988); *People v. Correa*, 108 Ill.2d 541, 92 Ill.Dec. 496, 485 N.E.2d 307, 310–11 (1985); *see also United States v. Santelises*, 509 F.2d 703, 703–04 (2d Cir.1975) (denying *coram nobis* petition alleging ineffective assistance of counsel because it did not allege affirmative misstatement of plea's consequences).[9]

8. The majority of an Eighth Circuit panel distinguished *Strader* in *Hill v. Lockhart*, 731 F.2d 568 (8th Cir.1984). There, the court found that even if Hill's counsel misstated the collateral consequences of his guilty plea with regard to parole eligibility, his error was not so gross as to violate Hill's Sixth Amendment right to effective counsel. *Id.* at 571–72. Thus, although *Strader* and *Hill* reached opposite results, they agreed that affirmative misstatement of a plea's collateral consequences may, in some circumstances, constitute ineffective assistance. In reviewing *Hill*, the Supreme Court found it unnecessary to address this question. The Supreme Court concluded that Hill was not entitled to relief because he did not establish the second prong of the *Strickland* analysis, that is, he did not show that he would have pled not guilty if his counsel had not misinformed him. *Hill v. Lockhart*, 474 U.S. 52, 60, 106 S.Ct. 366, 371, 88 L.Ed.2d 203 (1985).

9. It is unnecessary to decide here whether a defense attorney's failure to mention the deportation consequences of a plea might also constitute ineffective assistance in some circumstances. Yet, there is no clear reason in principle or policy why this type of alleged error, like an affirmative misstatement, should not be evaluated under the familiar *Strickland* analysis. Rather than applying a flat, per se rule, all facts and circumstances should be taken into account to determine if the attorney's neglect of the deportation issue fell below the prevailing professional norms of performance. Several state courts have adopted this approach. *See Commonwealth v. Wellington*, 305 Pa.Super. 24, 451 A.2d 223 (1982); *People v. Wiedersperg*, 44 Cal.App.3d 550, 118 Cal.Rptr. 755 (1975). Yet, the greater weight of authority is to the contrary. *See supra* note 7 and accompanying text.

As the government notes, a few cases have reached the opposite conclusion, indicating that a guilty plea is valid even if counsel affirmatively misinformed the defendant about the plea's deportation consequences. *See United States v. Sambro*, 454 F.2d 918, 921–22 (D.C.Cir.1971); *United States v. Parrino*, 212 F.2d 919, 921–22 (2d Cir.1954), *cert. denied*, 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954).[10] Neither case is apposite or persuasive here. In neither case was the issue framed in terms of the constitutional right to effective assistance of counsel.[11] Moreover, subsequent cases have rejected the reasoning of *Sambro* and *Parrino*. In particular, after extensive discussion of the two decisions, the Fourth Circuit panel in *Strader* stated that "[w]e regard those cases as aberrations." 611 F.2d at 64.

■ In sum, counsel's affirmative misrepresentation regarding the deportation consequences of a guilty plea may, but does not automatically, constitute ineffective assistance. Whether the assistance was ineffective is evaluated under the familiar two-part *Strickland* analysis, and depends on "[t]he totality of the circumstances." *Downs–Morgan*, 765 F.2d at 1541. Thus, the initial question is whether the performance of petitioner's counsel was, in light of all circumstances, unreasonable under prevailing professional norms. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. The present record, including the transcript of the July 6, 1990 hearing, plainly reflects that petitioner's counsel was flatly wrong about the availability of a judicial recommendation against deportation in petitioner's case. Counsel should have been aware from even a cursory reading of the statute that a § 1251(b) recommendation was not available in a drug trafficking case. His failure in this regard is plainly unreasonable under prevailing professional norms. *See Strader*, 611 F.2d at 63

(finding ineffective assistance where lawyer could have easily discovered applicable rule in published material). Thus, the first element of the *Strickland* analysis is satisfied here.

### 2.

■ Prejudice is the second element of the *Strickland* analysis. Petitioner must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. 466 U.S. at 694, 104 S.Ct. at 2068. It is well established that, if petitioner had raised the instant claim by direct appeal or § 2255 motion, *Strickland* would have required him to show a reasonable probability that, but for his counsel's error, he would have pled not guilty and gone to trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

■ At first blush, it seems obvious that this test is the same as the second requirement for *coram nobis* relief, namely that the petitioner must show it is probable that a different result would have occurred but for the error of which he complains. *See Dellinger*, 657 F.2d at 144 n. 9; *Bateman*, 277 F.2d at 68. Yet, this is not necessarily so. The government suggests that one who seeks *coram nobis* relief must show not only that he would have pled not guilty and gone to trial, but also that it is probable he would have been acquitted. There is some support for the government's view that the standard of prejudice that merits the extraordinary remedy of *coram nobis* is higher than the prejudice that justifies *habeas corpus* or other remedies. *See United States v. Keogh*, 440 F.2d 737, 741 (2d Cir.1971), *cert. denied*, 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 254 (1971). The reason is that *coram nobis* is "the practical equivalent of acquittal," since the government generally has little interest .

---

**10.** Both decisions sparked sharp dissents at the time they were issued. *Parrino* was decided by a vote of two to one, and as recognized by a later authority, "the vigorous dissent of Judge Frank [in *Parrino* ] more likely reflects the present attitude of the judiciary." 8A J. Moore, *Federal Practice*, ¶ 32.07[3b] at 32–80 (Cipes ed. 1969). In *Sambro*, a motion for rehearing en banc was rejected by a vote of five to four. 454 F.2d at 924. Judge Bazelon's dissent from the denial of

rehearing points out that the D.C. Circuit had previously endorsed Professor Moore's view of *Parrino*. *Id.*, 212 F.2d at 926; *see Briscoe*, 432 F.2d at 1353.

**11.** In each case, the defendant filed a motion to withdraw his plea pursuant to Rule 32(d), Fed. R.Crim.P. *Sambro*, 454 F.2d at 920; *Parrino*, 212 F.2d at 920–21.

in reprosecuting a person whose sentence has already been served. *Id; In re Hiss,* 542 F.Supp. 973, 986–87 (S.D.N.Y.1982), *aff'd,* 722 F.2d 727 (2d Cir.) (unpublished), *cert. denied,* 464 U.S. 890, 104 S.Ct. 232, 78 L.Ed.2d 225 (1983). Yet, the greater weight of authority indicates that *coram nobis* relief does not require a showing of innocence or likely success at trial. *Downs–Morgan,* 765 F.2d at 1541; *United States v. Rasco,* 697 F.Supp. 343, 345–46 & n. 4 (N.D.Ill.1988). This conclusion is supported by the Fourth Circuit's decision in *United States v. Mandel,* 862 F.2d 1067 (4th Cir.1988), *cert. denied,* 491 U.S. 906, 109 S.Ct. 3190, 105 L.Ed.2d 699 (1989). There, the court held that *coram nobis* relief is available even if the alleged error does not affect the conclusion that the defendants were guilty of criminal conduct. The court recognized that a *coram nobis* petition does not compel the court to decide "if the petitioners are bad men or even if they have committed crimes." *Id.* at 1075.[12] In short, petitioner need not show that he would have been acquitted of the drug trafficking charge if he had insisted on going to trial.

There is a second possible distinction between the two standards of prejudice involved here. *Strickland* requires the petitioner to show a "reasonable probability" that he would have pled not guilty. 466 U.S. at 694, 104 S.Ct. at 2068. A "reasonable probability" is more than a mere conceivable effect, but less than a "more likely than not" showing. *Id.* By contrast, *coram nobis* relief is available only if petitioner shows it is "probable" that he would have pled not guilty. *Dellinger,* 657 F.2d at 144 n. 9; *Bateman,* 277 F.2d at 68. It is unclear what degree of probability is required. In a different context, it has been noted that the term "probable" may impose a lower "reasonable probability" test or a higher "more likely than not" standard. *See Johnson v. Singletary,* 938 F.2d 1166, 1190 n. 8 (11th

Cir.1991) (construing requirement that *habeas* petitioner demonstrate "probable" innocence to overcome procedural default), *cert. denied,* —— U.S. ——, 113 S.Ct. 361, 121 L.Ed.2d 274 (1992); *id.* at 1200 n. 6 (Anderson, J., concurring in part and dissenting in part). Unless petitioner can at least meet the lower "reasonable probability" standard, it is unnecessary to decide here if the higher standard is required for *coram nobis* relief. Thus, for present purposes, it will be assumed that petitioner need only establish a reasonable probability that he would have pled not guilty. *See United States v. Castro,* 26 F.3d 557, 559 (5th Cir.1994) (holding that defendant who establishes ineffective assistance claim is entitled to *coram nobis* relief).

Petitioner's affidavit states that he was pressured to plead guilty, and that a significant factor in that pressure was his counsel's assurance that he would receive a judicial recommendation against deportation. Yet, his assertion is not necessarily conclusive. All facts and circumstances surrounding petitioner's plea must be considered. *See Hill v. Lockhart,* 474 U.S. 52, 59–60, 106 S.Ct. 366, 370–71, 88 L.Ed.2d 203 (1985). The decision whether to plead guilty is influenced greatly by the likelihood of success at trial. *Id.* If petitioner's conviction was highly likely or virtually certain, then it is very likely he would have pled guilty even had he received accurate advice concerning deportation, since conviction at trial would have resulted in a greater sentence as well as deportation. *See id.* at 60, 106 S.Ct. at 371.[13] Moreover, if petitioner's chances of acquittal were slim, it is unlikely that his counsel would have changed his advice concerning the plea, even if properly informed about the unavailability of a judicial recommendation against deportation. *See id.* at 59, 106 S.Ct. at 370. In this regard, it is compelling to note (i) that petitioner attempted to sell drugs to an undercover police officer, (ii) that his supplier, Roberto Esteban Fuentes, would have testi-

---

12. In another case, the Fourth Circuit granted *coram nobis* relief on the ground that a guilty plea was involuntary without mentioning whether the petitioner had a chance of succeeding at trial. *Mathis v. United States,* 369 F.2d 43, 44–45 (4th Cir.1966).

13. It is important to note again that the test here is not whether petitioner would have been acquitted or convicted at trial. Yet, as the Supreme Court made clear in *Hill v. Lockhart,* the evidence of petitioner's guilt is an important consideration in determining whether he would have pled not guilty.

fied that he repeatedly distributed cocaine to petitioner, (iii) that Fuentes' testimony would have been corroborated by the eyewitness testimony of a government informant, (iv) that, on April 2, 1990, petitioner and his counsel stipulated that the government's statement of facts was true and accurate, including the fact that petitioner was reasonably aware that the conspiracy involved over 500 grams of cocaine, (v) that at his plea hearing and sentencing hearing, petitioner stated that he committed the acts alleged by the government, (vi) that petitioner does not now maintain his innocence of the charge to which he pled guilty, and (vii) that by pleading guilty and cooperating with the authorities, petitioner earned himself a downward departure and a lenient six month sentence of imprisonment.[14] Based on these facts, petitioner cannot establish a reasonable probability that he would have pled not guilty had he received correct advice about the prospect of deportation. As a result, he is not entitled to *coram nobis* relief.

### 3.

The three remaining requirements for *coram nobis* relief are considered as alternative grounds for denial of the petition. Each requirement reflects the fact that *coram nobis* is a remedy that is available even after a criminal defendant has completed his sen-

tence, and therefore represents a significant impingement on the finality of criminal judgments. It is clear that the remaining consequences of petitioner's conviction, namely threatened deportation and the possibility of further detention pending deportation, are severe enough to create a case or controversy under Article III. *See Fong Haw Tan v. Phelan*, 333 U.S. 6, 10, 68 S.Ct. 374, 376, 92 L.Ed. 433 (1948) (stating that "deportation is a drastic measure, at times the equivalent of banishment or exile"). And, it is equally clear that a more usual remedy is not available to petitioner now. He has completed his sentence, is not presently in custody, and is therefore ineligible to seek § 2255 or *habeas* relief. *United States v. Mandel*, 862 F.2d 1067, 1075 (4th Cir.1988).

■ As to the final element for *coram nobis* relief, petitioner must establish that sound reasons exist for his untimely failure to seek other remedies. *Morgan*, 346 U.S. at 512, 74 S.Ct. at 253.[15] Although most *coram nobis* petitions rejected on this ground were filed many years after the conviction became final,[16] a delay of even a few years represents an infringement of the government's interest in the finality of convictions,[17] and may prejudice the government's ability to respond to the claims. *See Kiger v. United States*, 315

14. Petitioner claims that he told his counsel, and presented airline tickets to prove that he was in Hawaii on several of the dates he was alleged to have sold cocaine to the government's informant. In light of the evidence of petitioner's guilt, this assertion is not compelling.

15. This requirement is more akin to the common-law doctrine of laches than to the "cause and prejudice" standard applied to procedural defaults in *habeas* cases. *See United States v. Darnell*, 716 F.2d 479, 481 n. 5 (7th Cir.1983), cert. denied, 465 U.S. 1083, 104 S.Ct. 1454, 79 L.Ed.2d 771 (1984). The *Darnell* court noted correctly that a stricter standard such as "cause and prejudice" is inappropriate because (i) the gates to *coram nobis* relief are already protected by significant hurdles, such as the requirement that the error be a fundamental one, and (ii) few federal prisoners will desire to wait until their sentence of imprisonment is complete to launch a judicial attack on their conviction. *Id.*

16. *See, e.g., Scates v. United States*, 914 F.2d 249, 1990 WL 135863, 1990 U.S.App. LEXIS 16,754 (4th Cir. Sept. 21, 1990) (23 years), cert. denied, 500 U.S. 919, 111 S.Ct. 2020, 114 L.Ed.2d 106 (1991); *Klein v. United States*, 880 F.2d 250 (10th

Cir.1989) (7 years); *Moody v. United States*, 874 F.2d 1575, 1576 (11th Cir.1989) (16 years), cert. denied, 493 U.S. 1081, 110 S.Ct. 1137, 107 L.Ed.2d 1042 (1990); *Maghe v. United States*, 710 F.2d 503, 503–04 (9th Cir.) (25 years), cert. denied, 463 U.S. 1212, 103 S.Ct. 3549, 77 L.Ed.2d 1396 (1983); *United States v. Correa–De Jesus*, 708 F.2d 1283, 1286 (7th Cir.) (14 years), cert. denied, 464 U.S. 1010, 104 S.Ct. 530, 78 L.Ed.2d 712 (1983); *McFadden v. United States*, 439 F.2d 285, 287 (8th Cir.1971) (13 years); *United States v. Rasco*, 697 F.Supp. 343, 345 (N.D.Ill.1988) (14 years); *United States v. Borom*, 646 F.Supp. 1104, 1105–06 (E.D.Wis.1986) (12 years); *cf. Nicks v. United States*, 835 F.Supp. 151, 156 (S.D.N.Y.1993) (finding sound reasons for 15 year delay).

17. The Supreme Court has noted that "[c]ontinuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy [*coram nobis*] only under circumstances compelling such action to achieve justice." *Morgan*, 346 U.S. at 511, 74 S.Ct. at 252.

F.2d 778, 779 (7th Cir.) (denying relief where petitioner waited four years to challenge conviction), *cert. denied,* 375 U.S. 924, 84 S.Ct. 270, 11 L.Ed.2d 166 (1963).

In this case, petitioner learned in July 1990 that he could not receive a judicial recommendation against deportation. In May 1991, represented by his present counsel, he filed a *habeas* petition challenging his immigration detention. He did not file his *coram nobis* petition alleging ineffective assistance until November 1994. Thus, at least three and one half years passed during which petitioner might have, but did not, raise the instant claim. As the government points out, nowhere in his petition, memorandum, or affidavit does petitioner explain why he failed to pursue these other avenues of relief.[18] As a result, his petition must be denied on this ground as well.

In sum, petitioner received mistaken advice from his counsel, but is not entitled to *coram nobis* relief. He cannot show, as required, that there is a reasonable probability that the error affected the outcome of his criminal proceeding, or that he has sound reasons for failing to seek earlier relief available to him. For the reasons stated, the petition must be denied.

An appropriate order shall issue.

---

**18.** Petitioner was in INS custody for 11 months after his release from federal prison, and he avers that he was experiencing significant health problems during this period, as a result of inadequate medical treatment of diabetes. By early 1992, however, he was out of custody and represented by his present counsel.