**Phanta DARAMY, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 98–CO–825.

District of Columbia Court of Appeals.

Submitted June 8, 1999.

Decided July 22, 1999.

---

David Carey Woll, Washington, DC, appointed by this court, was on the brief for appellant.

Wilma A. Lewis, United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr., Robert D. Okun, and Toni B. Florence, Assistant United States Attorneys, were on the brief for appellee.

Before TERRY and FARRELL, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

Appellant Phanta Daramy pled guilty to one count of distribution of marijuana, D.C.Code § 33–541(a)(2)(D) (1998 Repl.), and one count of possession of marijuana, D.C.Code § 33–541(a)(2)(D). Daramy appeals the trial court's denial of her motion

to vacate her convictions, contending that the trial court erred in that it gave her an inadequate warning of the potential consequences of a conviction upon her efforts to become a naturalized citizen, and also accompanied such warning as was given with statements that lulled her into disregarding the warning, and that thus the trial court was required to grant her motion to vacate her convictions. We hold that the trial court's colloquy with appellant satisfied the advice requirements of D.C.Code § 16–713 (1997 Repl.), and therefore affirm.

In 1993, the government filed a three count information charging Daramy with two counts of distribution of marijuana, and one count of possession with intent to distribute marijuana. In 1994, Daramy offered to plead guilty to one count of distribution of marijuana and one count of possession of marijuana. In exchange, the government agreed to dismiss the remaining distribution count. Before accepting the pleas, the trial court addressed Daramy personally in open court as required by Super. Ct.Crim. R. 11.

In response to a question by the trial court, Daramy responded that she was born in Monrovia, Liberia, and was not a United States citizen. The court then advised Daramy of the consequences of a conviction on her efforts to be naturalized:

Okay. Well, all I need to know is whether you have become a citizen already. If you haven't, I am required to tell you that there's a provision of the D.C. law which requires that for guilty pleas of people who are not U.S. citizens, the Court—the Judge is required to tell the defendant that Immigration and Naturalization Service could review your status to decide whether to allow you to remain in the United States or to return to your home country.

If you were required to depart, put it plainly, if you were deported, you could be barred from re-entry at some future date.

Now these are misdemeanors and they may not even bother and they usually focus on more serious crimes and crimes of what they call moral turpitude. But, the law requires me to tell you for any offense, Immigration has complete discretion—I have no control over whether they do or they don't, to review your status and decide whether you should stay in the United States or not. Do you understand that?

Daramy responded in the affirmative. After hearing the evidence the government would have produced at trial, Daramy admitted to selling one hundred dollars worth of marijuana to an undercover police officer. The trial court concluded that Daramy made an informed and voluntary decision to waive her rights and plead guilty. The trial court accepted the plea and on the same day sentenced Daramy to two years of unsupervised probation.

Over two years later, Daramy filed a motion to vacate her convictions and withdraw her guilty pleas. She based her motion on the contention that the trial court's advice concerning the potential consequences of the convictions did not satisfy the requirements of D.C.Code § 16–713. The trial court denied the motion. On appeal, Daramy again contends that the trial court erred in failing to adhere to the statutory requirements of § 16–713 and that the trial court lulled her into a false sense of security that the Immigration and Naturalization Service ("INS") would not take adverse actions concerning her naturalization.

The statute in question requires the trial court to give the following advice:

If you are not a citizen of the United States, you are advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

D.C.Code § 16–713(a). The statute also provides that failure to give the advice

shall result in the vacation of the convictions:

> If the court fails to advise the defendant as required by subsection (a) and the defendant shows that conviction of the offense to which the defendant· pleaded guilty ... may have the consequences for the defendant of deportation, exclusion from the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty· ..., and enter a plea of not guilty. Absent a record that the Court provided the advisement required by subsection (a), the defendant shall be presumed not to have received the required advisement.

D.C.Code § 16–713(b).

■ We first address the government's contention that Daramy's motion to withdraw her guilty plea was properly denied because she failed to assert her innocence. In order to prevail on a post-sentencing motion to withdraw a guilty plea, the prisoner must show "manifest injustice." *(Linda) Johnson v. United States*, 631 A.2d 871, 874 (D.C.1993), (citing *Hicks v. United States*, 362 A.2d 111, 113 (D.C. 1976) (per. curiam)). It is true that this court has stated that "[i]n considering a motion for a withdrawal of a plea of guilty, such a factor [i.e., the prisoner's assertion of innocence] not only is important, but may be conclusive." *Bettis v. United States*, 325 A.2d 190, 195 (D.C.1974) (citation omitted). Daramy counters, however, that the mandatory language of § 16–713 dictates that the "manifest injustice" standard normally applicable to a post-sentencing motion to withdraw a guilty plea not apply in this instance.

■ To resolve this issue, it is necessary to look to the legislative history of the statute. The purpose of the enactment was to ensure that aliens are "advised of the possible immigration and naturalization consequences that may arise following entry of a plea of guilty or nolo contende-

re." COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON THE JUDICIARY, Report on Bill No. 4–120, District of Columbia Sentencing Improvements Act 3 (1982) [hereinafter Judiciary Committee Report]. In its report, the District of Columbia Council Judiciary Committee noted that there was a "large and growing population of non-citizens within the District[']s borders." *Id.* The committee further noted that "[a]n alien may become subject to deportation if convicted of a crime involving moral turpitude, even if the alien is lawfully within the country as a permanent resident" (citation omitted), and to explain the reason that it was requiring such advice before a guilty plea is entered, observed that "furthermore, all efforts at post conviction relief have failed." *Id.*

To support its last observation, the Committee cited *United States v. Sambro*, 147 U.S.App. D.C. 75, 454 F.2d 918 (1971). Judiciary Committee Report, *supra*, at 3 n. 5. In that case, the United States Court of Appeals for the District of Columbia Circuit held that it was not an abuse of discretion for the trial court to deny a prisoner's motion to withdraw a guilty plea when the defendant contended that he was not aware that deportation was a potential consequence of that plea. *Sambro*, *supra*, 147 U.S.App. D.C. at 77–78, 454 F.2d at 920–21. Thus, the statute was in part a reaction to what the Judiciary Committee perceived to be the reluctance of the courts to grant a motion to withdraw a guilty plea when the defendant had not been advised of potential consequences with respect to the prisoner's immigration status.

■ When this court first construed § 16–713, it recognized that the statute "ended the trial court's discretion to assess on a case-by-case basis." *Alpizar v. United States*, 595 A.2d 991, 993 (D.C.1991) (footnote omitted). We commented on the compulsory nature of the statute:

> [T]he mandatory nature of the statutory provision requires the trial court to va-

cate any guilty pleas upon request and without regard to any other circumstances surrounding the entry of the plea, if it was entered by a defendant who risked deportation but was not so informed by the court as required by statute.

*Id.* Therefore, where the trial court fails to follow the advice requirement of § 16–713 in accepting a guilty plea, the presence or absence of an assertion of innocence by the defendant is not relevant to the decision whether to grant a motion to withdraw that plea.

We next examine Daramy's contention that her convictions should be vacated because the trial court failed to comply strictly with the requirements of D.C.Code § 16–713. The government responds that word-for-word quotation of the advice language of the statute is not required of the judge so long as the primary purpose of the statute is satisfied.

The government relies on *Norman v. United States,* 623 A.2d 1165, 1168–69 (D.C.1993), in which we addressed the notice and inquiry requirements of D.C.Code § 23–111 (1996 Repl.). Under that statute, the prosecution may request increased punishment because of prior convictions. D.C.Code § 23–111(a). To trigger it, the prosecution must first file an information to notify the defendant, and in it set forth the previous convictions. *Id.* The trial court is then required, after conviction but before imposition of sentence, to inquire of the defendant whether he or she affirms or denies the previous convictions. D.C.Code § 23–111(b).

■ In *Norman,* the trial court inquired of the defendant about his prior convictions *before the defendant had been convicted.* 623 A.2d at 1165, 1168–69. This court first noted that the purpose behind § 23–111 was to give the defendant notice of the potential for increased sentencing because of his or her prior convictions, and an opportunity to affirm or deny the convictions. *Id.* at 1168. Accordingly, "the 'touchstone' of judicial compliance with

§ 23–111 is notice to the defendant; however, when such notice is given, technical violations constitute harmless error, and we will not remand for resentencing." *Id.* (quoting *Logan v. United States,* 591 A.2d 850, 852 (D.C.1991)).

■ Similarly, the purpose behind § 16–713 is "to ensure notice to aliens of the consequences of a guilty plea." Act No. 4–286, 30 D.C.Reg. 173 (1983). In the language quoted above the statute requires that alien defendants be notified that a conviction could result in deportation, exclusion from the United States, or denial of naturalization. D.C.Code § 16–713.

In this instance, the trial court did not recite the words of the statute verbatim. That certainly would have been the better practice, particularly where the legislature has specified the advice to be given. Applying the reasoning of *Norman,* however, we observe that the trial court specifically referred to the possibility of deportation and exclusion when it said: "If you were required to depart, put it plainly, if you were deported, you could be barred from re-entry at some future date." The remaining issue, then, is whether the trial court put Daramy on notice that her efforts to become naturalized could be thwarted. On that point, the trial court stated, "[the] Immigration and Naturalization Service could review your status to decide whether to allow you to remain in the United States or to return you to your home country."

Under U.S. law, only "aliens" can be deported. *See* 8 U.S.C. § 1151(a) (1998). An alien is "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3) (1998). Naturalization is "the conferring of nationality of a state upon a person after birth, by any means whatsoever." 8 U.S.C. § 1101(a)(23) (1998).

■ The trial court warned Daramy that the INS could decide whether to allow her to remain in the U.S. or to return her to Liberia. Only by denying the conferral

of United States nationality upon Daramy through naturalization would the INS be in a position to return Daramy to Liberia. As only aliens can be made to leave the United States, the plain import of the trial court's statement is that the INS could choose not to naturalize Daramy. Therefore, while the trial court did not quote the statute verbatim, it did place Daramy on notice that she might be denied naturalization.

■ Daramy also contends that she was lulled into a false sense of security by the trial court. Specifically, the trial court stated, "Now these are misdemeanors and they may not even bother and they usually focus on more serious crimes and crimes of what they call moral turpitude."

As the trial court acknowledged in denying appellant's motion to withdraw her guilty pleas, its predictions about what the INS would or would not do might "well have been left unsaid." But the trial court did not give Daramy assurances that the INS would not act upon her convictions. Rather, the trial court stated that the INS "*may* not even bother" (emphasis added). This was not a guarantee of INS inaction. Indeed, the trial court warned, "Immigration *has complete discretion—I have no control* over whether they do or they don't, to review your status and decide whether you should stay in the United States or not" (emphasis added). Thus, the trial court made it clear that this was an issue for the INS, within the discretion of the INS, and over which the trial court had no influence. Therefore, the court's remarks taken as a whole would not have lulled a reasonable person into a false sense of security. They neither negated the advice of possible consequences that the trial court had duly given, nor diluted them to a degree that made them ineffective. Finding no error, we direct that the order on appeal be

*Affirmed.*