**Phanta DARAMY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 98–CO–825.**

District of Columbia Court of Appeals.

April 27, 2000.

---

David Carey Woll, Washington, DC, appointed by this court, was on the brief for appellant.

Wilma A. Lewis, United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr., Robert D. Okun, and Toni B. Florence, Assistant United States Attorneys, were on the brief for appellee.

Before TERRY and FARRELL, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge.

This case is before us on appellant's motion for reconsideration of our opinion [1] affirming her convictions of possession and distribution of marijuana and the government's opposition to it. We grant the motion, vacate our prior opinion, reverse appellant's convictions, and remand to the trial court for further proceedings.

Appellant Phanta Daramy appealed the trial court's denial of her motion to vacate her convictions and permit her to withdraw her pleas of guilty to one count of distribution of marijuana,[2] and one count of possession of marijuana.[3] An alien, she asserted that when she entered her pleas

---

1. *Daramy v. United States,* 733 A.2d 949 (D.C. 1999).

2. D.C.Code § 33–541(a)(2)(D) (1998 Repl.).

3. *Id.*

the trial court erred in that it failed to give her the statutorily required warning, D.C.Code § 16–713 (1997 Repl.), of the potential consequences of the convictions upon her efforts to become a naturalized citizen, and that it also accompanied such warning as was given with additional statements that lulled her into disregarding the warning. On reconsideration, we adhere to our view that the trial judge did not commit reversible error when he paraphrased the statement of advice that the D.C.Code requires trial judges to give upon considering a guilty plea from an alien. In doing so, we reiterate that the prudent course for the trial judge to follow is to recite the statutory warning verbatim and thereby avoid raising, as this case does, close and difficult questions of the adequacy of the warning. Upon further consideration of appellant's arguments concerning the additional statements the trial judge made about the potential impact of a plea upon her immigration status, however, we are persuaded that the statements were so misleading as to require reversal.

In 1993, the government filed a three-count information charging Daramy with two counts of distribution of marijuana, and one count of possession with intent to distribute marijuana. In 1994, Daramy offered to plead guilty to one count of distribution of marijuana and one count of possession of marijuana. In exchange, the government agreed to dismiss the remaining distribution count. Before accepting the pleas, the trial court addressed Daramy personally in open court as required by Super. Ct.Crim. R. 11.

In response to a question by the trial court, Daramy responded that she was born in Monrovia, Liberia, and was not a United States citizen. The court then advised Daramy of the consequences of a conviction on her efforts to be naturalized:

> Okay. Well, all I need to know is whether you have become a citizen already. If you haven't, I am required to tell you that there's a provision of the D.C. law which requires that for guilty pleas of people who are not U.S. citizens, the Court—the Judge is required to tell the defendant that Immigration and Naturalization Service could review your status to decide whether to allow you to remain in the United States or to return to your home country.
>
> If you were required to depart, put it plainly, if you were deported, you could be barred from re-entry at some future date.
>
> Now these are misdemeanors and they may not even bother and they usually focus on more serious crimes and crimes of what they call moral turpitude. But, the law requires me to tell you for any offense, Immigration has complete discretion—I have no control over whether they do or they don't, to review your status and decide whether you should stay in the United States or not. Do you understand that?

Daramy responded in the affirmative. After hearing the evidence the government would have produced at trial, Daramy admitted to selling one hundred dollars worth of marijuana to an undercover police officer. The trial court concluded that Daramy made an informed and voluntary decision to waive her rights and plead guilty. The trial court accepted the plea, and on the same day sentenced Daramy to two years of unsupervised probation.

Over two years later, Daramy filed a motion to vacate her convictions and withdraw her guilty pleas, asserting that because of her convictions her request for permanent resident status was denied and she will not be able to become a naturalized citizen. She based her motion on the contention that the trial court's advice concerning the potential consequences of the convictions did not satisfy the requirements of D.C.Code § 16–713. The trial court denied the motion.

The statute in question requires the trial court to give the following advice:

If you are not a citizen of the United States, you are advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

D.C.Code § 16–713(a). The statute also provides that failure to give the advice shall result in the vacation of the convictions:

If the court fails to advise the defendant as required by subsection (a) and the defendant shows that conviction of the offense to which the defendant pleaded guilty ... may have the consequences for the defendant of deportation, exclusion from the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty ..., and enter a plea of not guilty. Absent a record that the Court provided the advisement required by subsection (a), the defendant shall be presumed not to have received the required advisement.

D.C.Code § 16–713(b).

## I.

■ We first address the government's contention that Daramy's motion to withdraw her guilty plea was properly denied because she failed to assert her innocence. In order to prevail on a post-sentencing motion to withdraw a guilty plea, the prisoner must show "manifest injustice." *(Linda) Johnson v. United States*, 631 A.2d 871, 874 (D.C.1993), (citing *Hicks v. United States*, 362 A.2d 111, 113 (D.C. 1976) (per curiam)). It is true that this court has stated that "[i]n considering a motion for a withdrawal of a plea of guilty, such a factor [i.e., the prisoner's assertion of innocence] not only is important, but may be conclusive." *Bettis v. United States*, 325 A.2d 190, 195 (D.C.1974) (citation omitted). Daramy counters, however, that the mandatory language of section 16–713 dictates that the "manifest injustice" standard normally applicable to a post-sentencing motion to withdraw a guilty plea not apply in this instance.

■ To resolve this issue, it is necessary to look to the legislative history of the statute. The purpose of the enactment was to ensure that aliens are "advised of the possible immigration and naturalization consequences that may arise following entry of a plea of guilty or nolo contendere." COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON THE JUDICIARY, Report on Bill No. 4–120, District of Columbia Sentencing Improvements Act 3 (1982) (hereinafter Judiciary Committee Report). In its report, the District of Columbia Council Judiciary Committee noted that there was a "large and growing population of non-citizens within the District[']s borders." *Id.* The committee further noted that "[a]n alien may become subject to deportation if convicted of a crime involving moral turpitude, even if the alien is lawfully within the country as a permanent resident" (citation omitted), and to explain the reason that it was requiring such advice before a guilty plea is entered, observed that "furthermore, all efforts at post conviction relief have failed." *Id.*

To support its last observation, the Committee cited *United States v. Sambro*, 147 U.S.App.D.C. 75, 454 F.2d 918 (1971). Judiciary Committee Report, *supra*, at 3 n. 5. In that case, the United States Court of Appeals for the District of Columbia Circuit held that it was not an abuse of discretion for the trial court to deny a prisoner's motion to withdraw a guilty plea when the defendant contended that he was not aware that deportation was a potential consequence of that plea. *Sambro, supra*, 147 U.S.App.D.C. at 77–78, 454 F.2d at 920–21. Thus, the statute was in part a reaction to what the Judiciary Committee perceived to be the reluctance of the courts to grant a motion to withdraw a guilty plea when the defendant had not been advised of potential consequences

with respect to the prisoner's immigration status.

■ When this court first construed section 16–713, it recognized that the statute "ended the trial court's discretion to assess on a case-by-case basis." *Alpizar v. United States*, 595 A.2d 991, 993 (D.C. 1991) (footnote omitted). We commented on the compulsory nature of the statute:

[T]he mandatory nature of the statutory provision requires the trial court to vacate any guilty pleas upon request and without regard to any other circumstances surrounding the entry of the plea, if it was entered by a defendant who risked deportation but was not so informed by the court as required by statute.

*Id.* Therefore, where the trial court fails to follow the advice requirement of § 16–713 in accepting a guilty plea, the presence or absence of an assertion of innocence by the defendant is not relevant to the decision whether to grant a motion to withdraw that plea.

## II.

We next examine Daramy's contention that her convictions should be vacated because the trial court failed to comply strictly with the requirements of D.C.Code § 16–713. The government responds that word-for-word quotation of the advice language of the statute is not required of the judge so long as the purpose of the statute is satisfied.

The government relies on *Norman v. United States*, 623 A.2d 1165, 1168–69 (D.C.1993), in which we addressed the notice and inquiry requirements of D.C.Code § 23–111 (1996 Repl.). Under that statute, the prosecution may request increased punishment because of prior convictions. D.C.Code § 23–111(a). To trigger it, the prosecution must first file an information to notify the defendant, and in it set forth the previous convictions. *Id.* The trial court is then required, after conviction but before imposition of sentence, to inquire of the defendant whether he or she affirms or denies the previous convictions. D.C.Code § 23–111(b).

In *Norman*, the trial court inquired of the defendant about his prior convictions *before the defendant had been convicted.* 623 A.2d at 1165, 1168–69. This court first noted that the purpose behind § 23–111 was to give the defendant notice of the potential for increased sentencing because of his or her prior convictions, and an opportunity to affirm or deny the convictions. *Id.* at 1168. Accordingly, "the 'touchstone' of judicial compliance with § 23–111 is notice to the defendant; however, when such notice is given, technical violations constitute harmless error, and we will not remand for resentencing." *Id.* (quoting *Logan v. United States*, 591 A.2d 850, 852 (D.C.1991)).

■ Similarly, the purpose behind § 16–713 is "to ensure notice to aliens of the consequences of a guilty plea." Act No. 4–286, 30 D.C.Reg. 173 (1983). In the language quoted above, the statute requires that alien defendants be notified that a conviction could result in deportation, exclusion from the United States, or denial of naturalization. D.C.Code § 16–713.

■ In this instance, the trial court did not recite the words of the statute verbatim. That certainly would have been the better practice, particularly where the legislature has specified the advice to be given. Applying the reasoning of *Norman*, however, we observe that the trial court specifically referred to the possibility of deportation and exclusion when it said: "If you were required to depart, put it plainly, if you were deported, you could be barred from re-entry at some future date."

■ The remaining issue, then, is whether the trial court put Daramy on notice that her efforts to become naturalized could be thwarted. On that point, the trial court stated, "[the] Immigration and Naturalization Service could review your status to decide whether to allow you to

remain in the United States or to return you to your home country."

Under U.S. law, only "aliens" can be deported. *See* 8 U.S.C. § 1151(a) (1998). An alien is "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3) (1998). Naturalization is "the conferring of nationality of a state upon a person after birth, by any means whatsoever." 8 U.S.C. § 1101(a)(23) (1998).

The trial court warned Daramy that the INS could decide whether to allow her to remain in the U.S. or to return her to Liberia. Only by denying the conferral of United States nationality upon Daramy through naturalization would the INS be in a position to return Daramy to Liberia. As only aliens can be made to leave the United States, the plain import of the trial court's statement is that the INS could choose not to naturalize Daramy. Moreover, it should have been apparent to Daramy that if she were deported and not allowed to return, her prospects for naturalization were at least seriously jeopardized. Therefore, while the trial court did not quote the statute verbatim, it said enough to warn Daramy that the convictions "may have the consequence[ ] of . . . denial of naturalization" in addition to the deportation and exclusion consequences expressly mentioned by the trial court.

### III.

 Daramy also contends that she was lulled into a false sense of security by the trial court. In addition to giving Daramy the minimal notice required by § 16–713, the trial court essentially rendered advice as to the likelihood that the Immigration and Naturalization Service (INS) would review her status and decide whether to institute deportation proceedings. He stated that "these are misdemeanors and they may not even bother and they usually focus on more serious crimes and crimes of what they call moral turpitude," and "Immigration has complete discretion." All of these statements, as Daramy learned, were incorrect. Conviction for any violation of a law, even a misdemeanor, relating to a controlled substance, other than a single offense involving simple possession of thirty grams or less of marijuana, is a deportable offense. 8 U.S.C. § 1227(a)(2)(B)(i). Waiver by the Attorney General is not available to an alien convicted of such an offense. 8 U.S.C. § 1229b (b)(1)(C). Finally, an alien who has been convicted of two or more misdemeanors is ineligible for special consideration under the "temporary protected status" provision of the Immigration Act of 1990. 8 U.S.C. § 1254a (c)(2)(B)(i).

The purpose of our statute, § 16–713, is not to have trial judges give substantive advice to defendants about the immigration consequences of their plea, but to alert them to the possibility that there might be such consequences so that they can seek competent advice from counsel. Any commentary by the trial judge, beyond the minimal advisory required by the statute, may thwart that purpose by potentially misleading the defendant into thinking she has received adequate advice and therefore need not pursue it further. Such a result is undesirable regardless of the correctness of the judge's commentary. Where, as here, the judge misstated the then current status of immigration law, reversal is required.

Accordingly, the judgment of the trial court is

*Reversed.*