Gary Van SLYTMAN, Appellant,

v.

UNITED STATES, Appellee.

Nos. 98–CO–1734, 01–CO–537.

District of Columbia Court of Appeals.

Argued March 12, 2002.

Decided Aug. 15, 2002.

Marc Resnick, Silver Spring, MD, appointed by the court, for appellant.

Chrisellen Kolb, Assistant United States Attorney, for appellee. Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Mary–Patrice Brown, John J. Manning and Susan A. Nellor, Assistant United States Attorneys, were on the brief for appellee.

Before STEADMAN and SCHWELB, Associate Judges, and PRYOR, Senior Judge.

STEADMAN, Associate Judge:

Appellant Gary Van Slytman, a citizen of the Republic of Guyana, pled guilty to several drug- and weapons-related offenses. Appellant subsequently sought to withdraw his guilty pleas on the ground that the trial court did not give him the statutory warning directed to non-citizens mandated by D.C.Code § 16–713 (2001).[1]

---

1. (a) Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime, the court shall administer the following advisement on the record to the defendant:

If you are not a citizen of the United States, you are advised that conviction of the of-

We reverse the trial court's denial of appellant's motion and remand the case with instructions to allow the withdrawal of the plea.

## I.

On July 21, 1998, appellant pled guilty to charges of conspiracy to distribute and to possess with intent to distribute cocaine, D.C.Code §§ 22–1805a(a), 48–904.01(a)(1); distribution of cocaine, D.C.Code § 48–904.01(a)(1); possession with intent to distribute cocaine, *id.;* possession of an unregistered firearm, D.C.Code § 7–2502.01(a); and unlawful possession of ammunition, D.C.Code § 7–2506.01(3).[2] Before accepting this plea, the trial court addressed appellant personally as required by Super. Ct.Crim. R. 11. As part of its colloquy, the court advised appellant that his conviction could have consequences under immigration law.

> COURT: And, of course, I think one of the big issues, I think, for you has been this deportation thing which is out of my hands.[3] I'm a judge of law, the

judicial process. I don't deal with administrative matters. That's out of my jurisdiction. What the Immigration and Naturalization Service does is totally separate from this court of law. But you will, if you're a citizen of Guyana, you'll have to deal with the Immigration [and] Naturalization Service on these kind of charges. Because I don't have to tell you, in America drugs are a big issue and a political football .... So that's beyond my control. And you deal with them after you've dealt with this. You know that?

> APPELLANT: Yes.

> COURT: You thought about that?

> APPELLANT: Yes.

The court subsequently concluded that appellant had voluntarily and knowingly decided to plead guilty and accepted his plea.

Prior to sentencing, the trial court denied appellant's first motion to withdraw his guilty plea.[4] The court conducted a sentencing hearing on October 30, 1998 after which it sentenced appellant to one to

---

fense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

(b) Upon request, the court shall allow the defendant a reasonable amount of additional time to consider the appropriateness of the plea in light of the advisement. If the court fails to advise the defendant as required by subsection (a) and the defendant shows that conviction of the offense to which the defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty. Absent a record that the court provided the advisement required by subsection (a), the defendant shall be presumed not to have received the required advisement. D.C.Code § 16–713.

2. One of appellant's co-defendants also pled guilty on that same day; two others had pled guilty previously.

3. The trial court was aware of appellant's alien status early on and at a pre-trial proceeding on July 14, 1998 even inquired as to whether appellant might be deported if he accepted the government's plea offer. Appellant's counsel responded affirmatively. We also note that after a competency screening examination of appellant held on July 15, the psychologist reported to the trial court that appellant's "difficulties in cooperating with his attorney appear to stem from his concern that if he pleads guilty to any offense, he will be sentenced and deported to Guyana after serving his prison term."

4. In his appeal, appellant has not referred to any of his arguments from this motion and thus we treat them as abandoned. *See Democratic State Comm'n v. Bebchick,* 706 A.2d 569, 572 n. 5 (D.C.1998).

three years for conspiracy, four to twelve years for distribution, four to twelve years for possession with intent to distribute, all to be served concurrently, and sixty days each for possession of an unregistered firearm and possession of ammunition, to be served concurrently with each other but consecutively to the other sentences. Appellant then on September 15, 1999, filed a second motion to withdraw his guilty plea. On March 27, 2001, the trial court denied the motion without a hearing, and appellant timely appealed.

## II.

The first issue before us is whether the quoted portion of the trial court's pre-plea inquiry satisfied the command of the statute [5] that the court "administer the following advisement" to the pleading non-citizen defendant: [6] "If you are not a citizen of the United States, you are advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." The warning thus encompasses three possible distinct consequences: deportation, exclusion, and denial of naturalization.[7]

Although the statutory warning is categorical on its face, we have indicated that the statute demands substantial compli-

ance, not strict. *See Daramy v. United States,* 750 A.2d 552, 556–57 (D.C.2000). In that case, a trial court's failure to mention specifically one of the three enumerated immigration consequences (denial of naturalization) was held not to constitute reversible error since the trial court's warning, which explicitly referred to the other two consequences, deportation and exclusion, sufficiently put the defendant on notice that her conviction could also have naturalization consequences. *Accord State v. Malcolm,* 257 Conn. 653, 778 A.2d 134, 140–41 (2001).

 Here, the trial court's warning specifically mentioned only deportation. The government urges us to extend the holding in *Daramy* so that the trial court's mentioning only one of the three consequences, at least where coupled with generalized reference to the need to deal with the immigration authorities, should be considered substantial compliance as well. We cannot agree with such an attenuated reading of the statute. "[T]he purpose behind § 16–713 is 'to ensure notice to aliens of the consequences of a guilty plea.'" *Daramy, supra,* 750 A.2d at 556 (quoting Act No. 4–286, 30 D.C.Reg. 173 (1983)). A warning that includes only one of three distinct immigration consequences does not provide adequate notice and would essentially read out of the statute

**5.** At least eighteen states also require that trial courts warn defendants of immigration consequences that may result from a guilty plea. *See INS v. St. Cyr,* 533 U.S. 289, 322 n. 48, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (listing jurisdictions).

**6.** Of course the statute by its own terms requires the giving of the warning in every guilty plea, but failure to do so can have adverse consequences only in the case of a non-citizen. We do not address here a situation in which the trial court has no reason to believe that the defendant is a non-citizen or is expressly advised to the contrary. *Cf. Fre-*

*gia v. State,* 903 S.W.2d 94, 97–98 (Tex.App. 1995).

**7.** The statute "incorporates several distinct terms of art from immigration law. 'Deportation is the removal or sending back of an alien to the country from which he or she has come....' 'Exclusion' is 'being barred from entry to the United States.' 'Naturalization' is a process by which an eligible alien, through petition to appropriate authorities, can become a citizen of the United States." *People v. Zamudio,* 23 Cal.4th 183, 96 Cal. Rptr.2d 463, 999 P.2d 686, 702 (2000) (citations omitted) (alteration in original).

the two additional consequences about which a warning must be given. As the California Supreme Court stated in a similar case [8] involving a statute virtually identical to ours:

> Petitioner asserts that defendant's having been advised of possible deportation consequences effectively warned him that any reentry would result in removal, which petitioner asserts is the 'functional equivalent' of exclusion. Aliens subject to deportation, however, are not automatically or indefinitely subject also to exclusion. An alien in the United States becomes subject to exclusion only if actually deported; some deportable persons who agree to depart the United States at their own expense may have available a voluntary departure remedy not entailing exclusion from reentry. Moreover, some deported persons are barred from reentry only for a period of years, the length of which may vary depending on the circumstances.

*Zamudio, supra* note 7, 96 Cal.Rptr.2d 463, 999 P.2d at 702 (citations omitted).

■ When a trial judge warns of deportation only, such a warning does not give sufficient notice to an alien defendant of the possibility of exclusion or denial of naturalization and thus does not substantially comply with § 16–713.

### III.

■ We next turn to the question whether, having established a failure to give the warning, appellant is entitled to withdraw his guilty plea. At the threshold, by the terms of the statute, appellant must show that his conviction "may have the consequences for the defendant of deportation, exclusion from the United States, or denial of naturalization." Regarding the consequence of deportation,

appellant has no cause of complaint since he was warned of the possibility and nonetheless chose to plead guilty. However, in addition, he asserts that his conviction constituted an "aggravated felony" for purposes of immigration law. It appears that under 8 U.S.C. §§ 1101(f)(8), 1427(a) (2000), an alien with an aggravated felony conviction cannot become a citizen for five years after the conviction. Similarly, under 8 U.S.C. § 1182(a)(9)(A), an alien with an aggravated felony conviction who has been deported will be excluded from entering the United States for twenty years. We conclude that appellant's circumstances bring him within the protection of the statute with respect to the unwarned consequences.

Prior to the enactment of § 16–713, trial courts could exercise discretion in deciding whether to allow a defendant to withdraw a plea because he did not have full knowledge of potential immigration consequences. However, as we stated in *Alpizar v. United States,* 595 A.2d 991 (D.C. 1991), in describing the new statute:

> By enacting § 16–713, the Council of the District of Columbia ended the trial court's discretion to assess on a case-by-case basis whether such pleas should be vacated in the interest of justice .... [U]nder the statute, where the court fails to advise a defendant and where the defendant demonstrates that the conviction could lead to deportation, exclusion or denial of citizenship, the court 'shall' permit that defendant to withdraw his plea of guilty. D.C.Code § 16–713(b) (1989 Repl.) Thus, the mandatory nature of the statutory provision requires the trial court to vacate any guilty pleas upon request and *without regard to any other circumstances sur-*

---

**8.** The defendant had been warned of possible deportation and denial of naturalization but not of exclusion.

*rounding the entry of the plea,* if it was entered by a defendant who risked deportation[, exclusion or denial of naturalization] but was not so informed by the court as required by the statute.

*Id.* at 993 (footnote omitted) (emphasis added).

We think the foregoing passage is controlling here. Other jurisdictions, when faced with violations of immigration warning statutes virtually identical to § 16–713, have also adopted this simple two-step approach, even with its considerable *per se* element, regarding defendants' motions to vacate a plea. *See State v. Douangmala,* 253 Wis.2d 173, 646 N.W.2d 1, 2 (2002); *Commonwealth v. Soto,* 431 Mass. 340, 727 N.E.2d 811, 812–13 (2000); *City of Youngstown v. Traish,* 133 Ohio App.3d 648, 729 N.E.2d 766, 768 (1999); *State v. Weber,* 125 Ohio App.3d 120, 707 N.E.2d 1178, 1182 (1997). *But see Zamudio, supra* note 7, 96 Cal.Rptr.2d 463, 999 P.2d at 696–97 (defendant must demonstrate prejudice).

We consequently find the government's citation to the recent Supreme Court case, *United States v. Vonn,* — U.S. ——, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002), to be unavailing. While the rule at issue in *Vonn,* FED.R.CRIM.P. 11, enunciated a specific type of error analysis (harmless error review) that the Supreme Court felt needed to be reconciled with the plain error standard of FED.R.CRIM.P. 52(b), § 16–713 contains no standard of review or other obvious element of flexibility, as we noted in *Alpizar.* This is unsurprising given that the Council enacted § 16–713 to overcome "the reluctance of the courts to grant a motion to withdraw a guilty plea when the defendant had not been advised of potential consequences with respect to the prisoner's immigration status." *Daramy, supra,* 750 A.2d at 555–56. We obey the legislative command.

We emphasize, however, that we are addressing only the case before us and the arguments made with respect thereto. There is no indication, for example, in the record here that appellant in fact received through his trial counsel or otherwise information as to the exclusion and denial of citizenship that might flow from his guilty plea.[9] Nor did the government make any such assertion to the trial court; indeed, it opposed the grant of a hearing by the trial court where such matters might have been explored.[10] Likewise, there is no suggestion that the appellant in any way chose to waive his right to a statutory warning, as he had the right to do. *Cf. Johnson v. United States,* 513 A.2d 798, 802 (D.C. 1986) (waiver of constitutional rights permissible). Nor was there any extensive delay in appellant's assertion of his desire to withdraw his guilty plea. Whether these or other factors might affect the right to withdraw a guilty plea under the statute, we leave for another day. As to the case before us, we reverse the trial court's denial of appellant's motion to withdraw his plea and remand for further proceedings.

*Reversed and remanded.*

---

**9.** The record reveals that appellant was well aware of the possibility of deportation even prior to the judge's warning, but that appellant never once expressed knowledge that his conviction could have exclusion or naturalization consequences.

**10.** We note in this regard the provision in the statute that "absent a record that the court provided the advisement required by subsection (a), the defendant shall be presumed not to have received the required advisement." D.C.Code § 16–713(b). The same might be said with respect to advisement from other sources.