Antonio MACHADO

v.

STATE of Rhode Island.

No. 2002–474–C.A.

Supreme Court of Rhode Island.

Nov. 26, 2003.

Damon D'Ambrosio, Esq., for Plaintiff.

Jane M. McSoley, Esq., for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

The applicant, Antonio Machado (Machado), appeals from the Superior Court judgment denying his application for post-conviction relief. Machado argues that the trial justice committed error by not properly apprising him of the extent of possible immigration consequences before accepting his plea of nolo contendere, and that this error therefore required the court to vacate his plea.

This case came before the Supreme Court for oral argument on October 8, 2003, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the record and the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we proceed to decide the appeal at this time.

On July 27, 2000, Machado entered nolo contendere pleas to one felony (breaking and entering) and two misdemeanors. The trial justice warned Machado that because he was a resident alien, his plea might have "some effect upon what happens with the immigration service." During the hearing, Machado's trial counsel said that he had explained to his client that an alien entering a plea faces the possibility of deportation. Machado was sentenced to fifteen years at the Adult Correctional Institutions, with three years to serve, twelve years suspended and twelve years

probation on the felony charge, and was sentenced to one year suspended, one year of probation, to be served concurrently, on each of the two misdemeanors. On August 22, 2001, Machado filed an application for post-conviction relief in which he asserted that his plea should be vacated because the trial justice failed to inform him of the possible immigration consequences of his plea as required by G.L. 1956 § 12–12–22. The application was denied and Machado timely filed a notice of appeal.

The date of Machado's plea is significant; only one week before the plea, on July 20, 2000, certain amendments to § 12–12–22 became effective. Of particular import to Machado are subsections (b) and (c) of § 12–12–22 which provide:

"(b) Prior to accepting a plea of guilty or nolo contendere in the district or superior court, the court shall inform the defendant that if he or she is not a citizen of the United States, a plea of guilty or nolo contendere may have immigration consequences, including deportation, exclusion of admission to the United States, or denial of naturalization pursuant to the laws of the United States. Upon request, the court shall allow the defendant additional time to consider the appropriateness of the plea in light of this advisement.

"(c) If the court fails to so inform the defendant as required by this section, and the defendant later shows that his plea and conviction may have immigration consequences, the defendant shall be entitled, upon a proper petition for post-conviction relief, to have the plea vacated. Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not [to] have received the advisement." Section 12–12–22, as amended by P.L.2000, ch. 501, § 1.

The record reveals that when Machado appeared before the court on July 27, 2000, his trial counsel informed the court that he had reviewed the plea form with Machado, saying "My client doesn't read English so I thought it best to read on the record what I have explained to him relative to the form that's just been submitted to your Honor." Trial counsel later said:

"I have explained to him inasmuch as he is a resident of this country, a resident alien, that the form does contain a provision which says that the Court or I cannot guarantee that the INS will not take independent action of this sentence, namely deportation. I have explained to him that that's a distinct possibility given the current INS regulations and the way they are enforcing them, and he understands that as well."

In conformity with Rule 11 of the Superior Court Rules of Criminal Procedure, the trial justice addressed Machado personally and carefully reviewed the rights that he was asking to waive and the recommended sentence. After determining that Machado had dropped out of school at a young age and therefore would have difficulty reading the plea form, the trial justice said, "Let's go through the form together so we can both be satisfied you understand what rights you will be giving up today."

Subsequently, the following colloquy took place:

"THE COURT: You also understand that because of the fact that you are a resident alien here that this may have some effect upon what happens with the immigration service. Do you understand that?

"THE DEFENDANT: Yes, your Honor.

"THE COURT: Your lawyer explained all that to you?

"THE DEFENDANT: Yes, your Honor.

"THE COURT: Is there anything that you wish to say at this time?

"THE DEFENDANT: No, your Honor."

■ The issue before this Court is whether the trial court's pre-plea inquiry satisfied the command of the statute that "the court shall inform the defendant that if he or she is not a citizen of the United States, a plea of guilty or nolo contendere may have immigration consequences, including deportation, exclusion of admission to the United States, or denial of naturalization * * *." Section 12–12–22(b).

■ This Court reviews issues of statutory interpretation *de novo*. *State v. Fritz*, 801 A.2d 679, 682 (R.I.2002) (citing *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates*, 763 A.2d 1005, 1007 (R.I.2001)). When the language of a statute is clear and unambiguous, we must enforce the statute as written by giving the words of the statute their plain and ordinary meaning. *In re Chaselle S.*, 798 A.2d 892, 894 (R.I.2002) (per curiam) (citing *Cummings v. Shorey*, 761 A.2d 680, 684 (R.I.2000)).

Before the July 20, 2000 amendment to § 12–12–22, the statute required only that, at the time of criminal arraignment, "each defendant shall be informed that if he or she is an alien in the United States, a plea of guilty or nolo contendere may affect his or her immigration status." Section 12–12–22. Effective July 2000, the General Assembly amended § 12–12–22 to require that the court inform the defendant before accepting a plea that the specific immigration consequences may include deportation, exclusion of admission to the United States, or denial of naturalization pursuant to the laws of the United States. Section 12–12–22(b). The amended statute also specifies that failure to inform a defendant shall entitle the defendant to have the plea vacated upon proper application for post-conviction relief. Section 12–12–22(c).

■ We have held that a trial justice need not "explore every possible consequence of a plea in order for the plea to be voluntary." *State v. Desir*, 766 A.2d 374, 377 (R.I.2001) (per curiam). As the possibility of deportation is only a collateral consequence, and not a direct consequence, we also previously have held that it need not be addressed with a defendant upon acceptance of a guilty or nolo contendere plea. *Id.* at 376; *State v. Alejo*, 655 A.2d 692, 692 (R.I.1995) (mem.); *State v. Figueroa*, 639 A.2d 495, 499 (R.I.1994). In *Desir*, we noted the enactment of the 2000 amendments to § 12–12–22, but stated that because the amended statute was not in effect at the time of the defendant's plea, it was not applicable to him. *Desir*, 766 A.2d at 376 n. 1.

The language of § 12–12–22(b), as amended, however, is clear and unambiguous and requires no further interpretation. It places an affirmative duty on a trial court to warn a noncitizen defendant of three specific potential immigration consequences of his or her plea.

Deportation, exclusion, and denial of naturalization are three distinct immigration procedures. The statute "incorporates several distinct terms of art from immigration law. 'Deportation is the removal or sending back of an alien to the country from which he or she has come * * *.' 'Exclusion' is 'being barred from entry to the United States.' 'Naturalization' is a process by which an eligible alien, through petition to appropriate authorities, can become a citizen of the United States." *Slytman v. United States*, 804 A.2d 1113, 1116 n. 7 (D.C.2002) (quoting *People v. Zamudio*, 23 Cal.4th 183, 96 Cal.Rptr.2d 463, 999 P.2d 686, 702 (2000)).

■ Machado now says he is facing immigration proceedings for deportation. Once deported, aliens may be denied reentry and naturalization. Some deported persons may be barred from reentry for a period of years, the length of which varies depending on the circumstances. 8 U.S.C. § 1182(a)(9)(A)(i) and (ii). The General Assembly, by amending § 12–12–22, clearly intended that trial justices warn noncitizens of these serious consequences before they accept a plea of guilty or nolo contendere. Significantly, the amended statute requires that the court grant a defendant additional time to consider his or her plea after receiving the advisements. Section 12–12–22(b).

The state contends that the trial justice was not "required to track exactly the language of the amendment to § 12–12–22," and that the court sufficiently warned Machado of potential immigration consequences to meet the prophylactic intent of the amendment. The state's argument is one week late and two warnings short.

■ The plain and clear language of § 12–12–22 requires the court to inform a noncitizen defendant of "deportation, exclusion of admission to the United States, or denial of naturalization." An advisement of deportation alone does not adequately warn a defendant of the other two immigration consequences.

The intent of the General Assembly to place a defendant on sufficient notice of the potential immigration consequences of his or her plea is further manifested by the provision that requires the court, upon request, to allow the defendant additional time to consider "the appropriateness of the plea in light of [the] advisement." Section 12–12–22(b). Moreover, the statute requires that the plea be vacated if the court fails to inform the defendant and the defendant can show later that the plea and conviction may have immigration consequences. Section 12–12–22(c).

■ We do not read the amended statute as requiring a trial justice to recite the warnings of § 12–12–22[1] verbatim. Although better practice would be to read the statutory language to the defendant, substantial, not strict, compliance will satisfy the statute's mandate. However, neither a generalized reference to potential immigration consequences nor an advisement of deportation alone gives adequate notice to an alien defendant of the possibility of exclusion or denial of naturalization.[2]

Here, the trial justice specifically warned Machado only that his plea "may have some effect upon what happens with the immigration service," and trial counsel indicated that he had explained only one of the three enumerated consequences, albeit the most severe consequence, deportation. We find that the admonishments given to Machado were not in substantial compliance with the clear mandate of § 12–12–22(b). They failed to convey the important message specified by the General Assembly that a plea of nolo contendere or guilty could have three very serious and specific immigration implications. Although the warnings by the trial justice and counsel would have been sufficient before July 20, 2000, they clearly did not satisfy the requirement of the amendment that became effective on that date.

1. The amendments to G.L.1956 § 12–12–22 as enacted by P.L.2000, ch. 501 contained an expiration date of January 15, 2003. This sunset provision was repealed by P.L.2003, chs. 1 and 2.

2. We note that the plea form currently utilized by the Superior Court does not enumerate the three specific immigration consequences.

We therefore reverse the trial court's denial of Machado's application for post-conviction relief, vacate the judgment, and remand the case to the Superior Court.