Eduardo A. BAUTISTA, Appellant,

v.

UNITED STATES, Appellee.

No. 09–CO–829.

District of Columbia Court of Appeals.

Argued Sept. 22, 2010.

Decided Dec. 23, 2010.

Alan B. Soschin, Washington, DC, Charles J. Soschin, for appellant.

Benjamin Eisman, Assistant United States Attorney, with whom Channing D. Phillips, Acting United States Attorney at the time the brief was filed, and Roy W. McLeese III, Chrisellen R. Kolb, and Richard E. DiZinno, Assistant United States Attorneys, were on the brief for appellee.

Before KRAMER and OBERLY, Associate Judges, and BELSON, Senior Judge.

PER CURIAM:

Appellant Eduardo Bautista appeals the trial court's denial of his motion to vacate his conviction and withdraw his plea of guilty to the charge of criminal contempt.[1] An alien, Bautista contends that the trial court failed to comply with D.C.Code § 16–713 (2001), which requires the court, before accepting a plea of guilt, to "administer [an] advisement on the record to the defendant" that his conviction could affect

1. D.C.Code § 23–1329 (2001).

his immigration status if he is not a United States citizen. D.C.Code § 16–713 (2001).[2]

The circumstances of the plea proceedings were unusual. During the first part of the proceedings, Bautista was advised of the potential immigration consequences of entering a plea of guilty to simple assault,[3] and he pleaded guilty to that offense. The proceedings then changed focus when the judge was made aware, for the first time it appears, of the existence of an amended information that contained a count of criminal contempt. After some discussion, Bautista was arraigned on that count. In the ensuing colloquy, the judge did not advise Bautista of the potential immigration consequences of pleading guilty to that offense before he pleaded guilty to it. In moving over four years later to vacate judgment and withdraw his plea of guilty to contempt, Bautista made the requisite showing under D.C.Code § 16–713(b) that his plea of guilty to the contempt charge had adversely affected his immigration status, and argued that pursuant to that statute his motion should be granted. We agree, reverse the trial court's denial of that motion, and remand for further proceedings.

We begin our discussion of the issues with a more detailed account of the plea proceedings. At the outset of the plea proceedings of November 4, 2004, the trial judge was aware that Bautista was charged with simple assault, but for reasons not clear from the record was not aware that what the Assistant United States Attorney referred to as "the full information" set forth a charge of criminal contempt as well as the charge of assault. Before being made aware of the contempt charge, the judge engaged in a colloquy with appellant concerning his constitutional right to go to trial and the panoply of related rights that he could exercise if he did so, including his right to require the government to prove his guilt *of the crime of assault* beyond a reasonable doubt, the opportunity to cross-examine the government's witnesses and to put on evidence in his own behalf, the right to take the stand himself, or not to do so without incurring any negative inferences, and the right to appeal if found guilty, with appointed counsel if he could not afford counsel. The court then addressed the maximum penalty for the count of simple assault. After informing appellant of the maximum penalty, the judge advised him as follows, quoting virtually verbatim the language of § 16–713:

2. D.C.Code § 16–713 provides:
(a) Prior to acceptance of a guilty plea or nolo contendere to any offense punishable as a crime, the court shall administer the following advisement on the record to the defendant:
"If you are not a citizen of the United States, you are advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."
(b) Upon request, the court shall allow the defendant a reasonable amount of additional time to consider the appropriateness of the plea in light of the advisement. If the court fails to advise the defendant as required by subsection (a) and the defendant shows that conviction of the offense to which the defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from the United States, or the denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty. Absent a record that the court provided the advisement required by subsection (a), the defendant shall be presumed not to have received the required advisement.

3. D.C.Code § 22–404 (2001).

Now the maximum penalty for assault, sir, is up to 180 days in jail, up to a $1,000 fine, or both. Now do you understand that if you are not a citizen of the United States, you are advised that the conviction of the offense for which you are charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States? [4]

The judge then asked, "[d]o you understand that, sir?" Bautista replied, "I do." Bautista's counsel then started to tell the judge what the plea agreement was, whereupon the Assistant United States Attorney noted that the "full information" set forth charges of both assault and contempt. Bautista's counsel agreed. After a pause, the trial judge said, "I see only one, one information here for assault." The government then informed the court that Bautista and his counsel knew about the amended information "long ago" and that the parties were making no request for a continuance. Bautista's counsel acknowledged that she had been given a copy of the amended information a few weeks earlier.

Informed of the existence of the amended contempt charges, the trial judge attempted to resume the plea proceeding. She advised Bautista of the additional sentence that the court could impose, and asked him whether he wished to plead guilty. After Bautista's affirmative response, the court had the government state the evidence it expected to adduce on both charges. The government did so.

As the court was then completing its colloquy with Bautista about the plea, Bau-

tista's counsel stated that while she had received the amended information some weeks before, Bautista had not been arraigned on the added charge. The judge, who had understood counsel to have indicated otherwise, then interrupted the plea proceeding to have Bautista arraigned on the contempt charge.[5]

The court then discussed with Bautista the matter of his plea to the contempt charge, which arose out of a violation of a court order that he stay away from the woman whom he admittedly assaulted. In connection with that charge, the trial judge did not repeat, with reference to the contempt charge, the advisement of immigration consequences she had given with specific reference to the assault charge. She advised appellant of the maximum penalty for the two charges, and again called upon the government to state the evidence with which it expected to prove both charges beyond a reasonable doubt. Appellant agreed that he had committed those acts, and confirmed that he was entering his pleas of guilty to assault and contempt voluntarily. Finally, before accepting Bautista's pleas to both offenses, the judge asked Bautista whether he had any questions, to which Bautista replied, "No, your honor." There was no objection to the manner in which the court conducted the proceeding.

Almost four-and-a-half years after he entered his pleas, on April 8, 2009, Bautista filed a motion to vacate judgment and withdraw guilty plea to the contempt charge on the ground that the court had failed to administer the alien-sentencing advisement "with regard to the contempt

---

4. The court's advice differed from the language of the statute only in that it used "the offense for which you are charged," while the statute reads, "the offense for which you have been charged."

5. During the arraignment the government, without objection, amended the information to correct certain dates, a matter not complained of on appeal.

charge" in that the advice provided "was given in the singular," in connection with the assault charge. Bautista argued that the court's failure to repeat the advisement was "of critical importance" because he was now facing exclusion from the United States by virtue of the fact that he stood convicted of two misdemeanors. His counsel informed the court that the Department of Homeland Security had upheld a denial of his request that his Temporary Protected Status (TPS) be allowed to remain in effect. In relevant part, the order denying his request for continued TPS status read, "[a]n alien shall not be eligible for [TPS] ... if ... that alien has been convicted of ... two or more misdemeanors in the United States." [6] The government opposed the motion to vacate the judgment and withdraw the plea of guilty to the charge of contempt. The trial court held no hearing on the motion and opposition, but entered a written opinion and order, denying the motion. This timely appeal followed.

■ Bautista argues that, although the court read the required advisement earlier in the plea proceeding, "the warning was only read in relation to the assault charge" and the court was required to repeat the advisement after he was arraigned on the contempt charge. Bautista also argues here, as he did in the trial court, that the "lack of any immigration consequence warning to Bautista is of critical significance as he now faces exclusion from the United States by virtue of two misdemeanor convictions, one of which is his ... contempt of court charge."

The government counters that the initial colloquy between the court and appellant, during which the required advisement was read, was part of a rather brief "unitary proceeding" and that, although the court did not reread the advisement after appellant was arraigned on the contempt charge, "[he] was clearly on notice of [the] potential consequences" of the contempt conviction.

The issue presented is whether, in the circumstances presented, the court's warning of potential immigration consequences of a plea of guilty to simple assault in the initial part of the plea proceedings also served to give the statutorily required warning with respect to criminal contempt.

We preface our discussion of this issue with the observation that for noncitizen criminal defendants, " 'preserving the ... right to remain in the United States may be more important ... than any potential jail sentence.' " *Padilla v. Kentucky*, —— U.S. ——, 130 S.Ct. 1473, 1483, 176 L.Ed.2d 284 (2010) (quoting *INS v. St. Cyr*, 533 U.S. 289, 322, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001)). Apparently recognizing this fact, the D.C. Council enacted the statute that we consider today as an important step toward ensuring that noncitizen defendants contemplating a guilty plea appreciate the immigration consequences that such an action may entail. The statute does not ask much of trial courts, but what it does require is clear.

In straightforward language, the controlling statute, D.C.Code § 16–713(a) (2001), provides that "[p]rior to acceptance of a plea of guilty ... to *any offense* punishable as a crime, the court shall"

**6.** An individual who has been granted TPS may not be removed from this country during the period in which the status is in effect, and may obtain authorization to work during that period. Immigration and Nationality Act § 244, 8 U.S.C. § 1254a (1996). Generally, the Secretary of Homeland Security designates foreign countries whose nationals may qualify for TPS due to conditions in that country that prevent the country's nationals from returning safely. Section 1254a (b).

advise the defendant "on the record" that if the defendant is not a U.S. citizen, "*conviction of the offense for which [the defendant has] been charged* may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (Emphasis added.) Subsection (b) provides that if the court "fails to advise the defendant as required by subsection (a) and the defendant shows that conviction of the offense to which the defendant pleaded guilty ... may have the consequences for the defendant of deportation, exclusion from the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty." In short, if a court fails to give a defendant the warning required by § 16–713(a), the defendant pleads guilty, and the guilty plea "may have" the immigration consequences set out in that section—and the government does not contest that it may in this case—the statute "*requires* the trial court to vacate any guilty plea upon request and without regard to any other circumstances surrounding the entry of the plea[.]" *Alpizar v. United States*, 595 A.2d 991, 993 (D.C.1991) (emphasis added).

Context makes clear, and we previously have recognized, that the categorical, emphatic phrasing of § 16–713 is no accident. Before § 16–713 was enacted, trial courts had discretion to permit defendants who had entered guilty pleas without full knowledge of the risk of deportation to withdraw such pleas. *Alpizar*, 595 A.2d at 993. The Council of the District of Columbia, however, perceived the courts to be "reluctan[t]" to grant such motions. *Daramy v. United States*, 750 A.2d 552, 555 (D.C.2000). Responding in part to this reluctance, *id.*, the Council stepped in and

enacted § 16–713, thereby "end[ing] the trial court's discretion to assess on a case-by-case basis whether such pleas should be vacated in the interest of justice." *Alpizar*, 595 A.2d at 993 (footnote omitted). In view of this history, it is not surprising that the resulting statute speaks in terms that we have called "mandatory," *id.*, "categorical," *Slytman v. United States*, 804 A.2d 1113, 1116 (D.C.2002), and "compulsory," *Daramy*, 750 A.2d at 556. Indeed, as we explained in an early case refusing to apply the statute retroactively, the statute effected a sea-change in the law so dramatic that interpreting the statute to apply to guilty pleas entered before it was enacted "would have far reaching consequences for the criminal justice system and possibly for immigration proceedings based upon those convictions that would then be vacated." *Alpizar*, 595 A.2d at 993.

Regarding advisement of potential immigration consequences, the trial judge began in a most appropriate manner, quoting the statute virtually verbatim. Understandably, however, in light of the fact that the only charge of which she was then aware was simple assault, she directed it explicitly to that charge.

The government argues that because Bautista had heard the court's advice of immigration regarding the assault charge, he "was clearly on notice of those potential circumstances" when he entered his plea of guilty to contempt. We cannot agree.

The court used no language that suggested to Bautista that the advice it gave him specifically regarding assault applied also to the distinct and quite different offense of criminal contempt. In light of the fractured sequence of the proceeding, we are not convinced by the government's argument that the court conducted a "unitary proceeding" and that as a result of the court's advisement of potential immi-

gration consequences of his plea to assault he had been given the required advice regarding a contempt conviction. In an important respect the proceeding was far from unitary as, after the plea proceeding and advisement of potential immigration consequences regarding assault were virtually completed, the focus of the proceeding shifted to the previously unmentioned charge of contempt. There followed much colloquy, and then an arraignment, before the court turned again to the plea proceeding regarding contempt, during which the court gave no advice regarding immigration consequences.

At the outset of the proceeding both counsel were aware, as the court apparently was not, that the information had been amended to include a count of contempt. Neither counsel, however, pointed out to the court the omission of immigration advisement regarding a plea of guilty to contempt, and defense counsel did not object to that omission.

The government has not argued plain error either in its brief or at oral argument. Its decision not to do so is understandable, as we indicated in *Slytman, supra,* that the plain error standard does not usually apply in cases involving a failure to give the § 16–713 warning. 804 A.2d at 1117–1118.

At oral argument, however, the government argued for the first time that Bautista was required to show manifest injustice to prevail on his motion to vacate judgment and withdraw plea of guilty.[7] The government did not raise that argument before the trial court or in its brief on appeal, and appellant had no opportunity to rebut it in his brief. This court may, in its discretion, entertain an argument made for the first time on appeal.[8] The argument is hardly surprising where the withdrawal of the plea is at issue. In this case, we can consider and reject it, and therefore need not give appellant the opportunity to brief it. In *Daramy,* we agreed with the appellant's contention that the manifest injustice standard, with its emphasis on an assertion of innocence, normally applicable to a post-sentencing motion to withdraw a guilty plea did not apply to claims of error based on D.C.Code § 16–713. 750 A.2d at 555–56. In *Slytman,* we explicitly recognized and adopted a "simple two-step approach, even with its considerable *per se* element, regarding defendants' motions to vacate a plea [pursuant to the statute]." 804 A.2d at 1118.[9]

In the end, while we conclude that it is possible that Bautista understood that the advice of immigration consequences relating to assault also applied to contempt, it

---

**7.** The government pointed out at oral argument that this court has stated that "the plain language of the § 16–713(b) permits the withdrawal of a plea only after a defendant states that the trial court failed to give the required warnings and, that because of this failure, he or she *has experienced* one of the enumerated adverse immigration consequences." *Valdez v. United States,* 906 A.2d 284, 287 (D.C.2006) (emphasis added). By paraphrasing the statutory language in that manner, we did not suggest that an alien could qualify for relief under the statute only if he had actually been deported, excluded or denied naturalization. The statute applies, by its terms, if the alien's plea "may have the consequences" just stated. The government has not argued that appel-

lant, who has been advised that he is losing his TPS status, has not made the requisite statutory showing.

**8.** *District of Columbia v. Helen Dwight Reid Educ. Found.,* 766 A.2d 28, 33 n. 3 (D.C.2001) (appellate court has discretion to consider, or not consider, an argument raised for the first time on appeal).

**9.** The two steps are: (1) the entry of guilty plea by a defendant who risked the specified immigration consequences, and (2) the failure of the court to warn the defendant as required by the statute.

**160**

is at least equally plausible that he did not understand that it was applicable. Nor can we know whether Bautista, as a lay person, thought that violating a stay—away order was deemed less severe—for immigration purposes—than assaulting another person. That his appointed counsel should have so advised him is not something we can rely upon in deciding this case. Instead, as we stated in *Alpizar*, *Daramy*, and *Slytman*, the courts must follow the legislative mandate that strictly requires that an alien defendant be properly advised before a court will accept a plea of guilty.

Accordingly, the order on appeal is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

*So ordered.*